Rel: 10/17/2014

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0649), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

OCTOBER TERM, 2014-2015

————————————————

1130385

————————————————

**Bessie Kirksey**

**v.**

**Iris Johnson et al**.

————————————————

1130403

————————————————

**Ex parte Iris Johnson et al.**

**PETITION FOR WRIT OF MANDAMUS**

**(In re: Bessie Kirksey et al.**

**v.**

**Iris Johnson et al.)**

PARKER, Justice.

Bessie Kirksey appeals an order of the Jefferson Probate Court ("the probate court") vacating its order discharging Kirksey as administrator ad litem of the estate of Kirksey's sister, Willie Mae Graves, deceased. Iris Johnson, Darryl Thomas, Dorothy McLemore, John McLemore, Jr., Jerrick McLemore, Frederick Pryor, Jr., Rafeal Santece Powell, Nyya Nicole Marshall, Brandon LeMar Marshall, and Jeffrey Sams (alleged heirs of Graves hereinafter collectively referred to as "the omitted heirs") filed a cross-appeal from the probate court's order insofar as it denied the omitted heirs' motion to transfer the case to the Jefferson Circuit Court based on the alleged lack of subject-matter jurisdiction in the probate court. For the reasons stated herein, we treat the cross-appeal as a petition for a writ of mandamus, and we have styled the case accordingly. We dismiss the appeal, and we grant the petition and issue the writ.

<u>Facts and Procedural History</u>

On June 3, 2011, Graves died intestate.  On June 21, 2011, Kirksey filed a petition in the probate court requesting appointment as administrator ad litem for the purpose of bringing a wrongful-death claim.  On June 30, 2011, Kirksey sent the probate court a letter via facsimile stating: "Below is the information you needed regarding the next of kin for Willie Mae Graves."  The letter then listed Kirksey's name and address and the names and addresses of Margaret Thompson and Sonya Gardner, whom the letter identified as Graves's sisters. Kirksey's letter to the probate court also stated that, "[a]t the time of death, Willie Mae Graves had no spouse or children."  On July 11, 2011, the probate court issued an order granting Kirksey's petition and stating:

> "Kirksey is appointed as administratrix ad litem in the matter of the estate of Willie Mae Graves, deceased, [to gather] information to investigate a wrongful death claim, with the express order that any settlement of the case must first be approved by [the probate court].  In addition, [Kirksey] must immediately deposit the recovery of any funds into the Jefferson County Probate Court Trust Fund for proper distribution."

Subsequently, Kirksey filed a wrongful-death action in the Jefferson Circuit Court.  On March 21, 2012, Kirksey filed a motion in the probate court stating that a proposed

3

confidential settlement had been reached with the defendant in the wrongful-death action. However, instead of asking the probate court to approve the proposed settlement of the wrongful-death action, as the probate court required in its July 11, 2011, order, Kirksey requested that she be relieved of that condition to her appointment as administrator ad litem. Kirksey also requested that the probate court not require her to deposit the funds with the probate court for distribution. In support of her motion, Kirksey attached a copy of Alabama's wrongful-death statute, § 6-5-410, Ala. Code 1975, which states, in pertinent part: "The damages recovered are not subject to the payment of the debts or liabilities of the testator or intestate, but must be distributed according to the statute of distributions."

On May 1, 2012, the probate court held a hearing on Kirksey's motion. On May 4, 2012, the probate court issued an order stating, in pertinent part:

> "(2) The court approves the wrongful death settlement of $2,250,000 on behalf of the estate of Willie Mae Graves.
>
> "(3) Pursuant to [the] Wrongful Death Act codified in [Ala. Code 1975,] § 6-5-410(c), the proceeds 'are not subject to the payment of the debts or liabilities of the testator or intestate,

4

but must be distributed according to the statute of distributions.'

"(4) According to [Kirksey], the deceased leaves three lawful heirs:

"Sister. Bessie Kirksey (adult of sound mind)

"Sister. Margaret Thompson (adult of sound mind)

"Sister. Sonya Gardner (adult of sound mind)

"(5) The court orders [Kirksey's attorney] to distribute the proceeds in accordance with [Ala. Code 1975,] § 43-8-42(3).

"(6) The court approves the distribution of these proceeds via the trust account of [Kirksey's attorney]. Said proceeds are not to be paid into the [probate court]."[1]

Although the probate court did not require Kirksey to deposit the wrongful-death-settlement proceeds with the probate court, the probate court purported to approve the settlement of the

---

[1]We note that, in its May 4, 2012, order, the probate court stated that the settlement of the wrongful-death action was "on behalf of the estate of Willie Mae Graves." However, as discussed more thoroughly below, a wrongful-death action is not brought by, or on behalf of, the estate of a decedent. Instead, Kirksey was appointed to bring the wrongful-death action on behalf of those entitled to receive any damages from such an action under the statute of distributions. See Ex parte Taylor, 93 So. 3d 118, 119 (Ala. 2012)(Murdock, J., concurring specially).

5

wrongful-death action and the distribution of the wrongful-death-settlement proceeds to Kirksey, Thompson, and Gardner.

The record includes an affidavit of Kirksey, which lists Kirksey, Thompson, and Gardner as a "full and exhaustive list" of Graves's siblings. The affidavit further states:

"6. I understand that a settlement was reached in the [wrongful-death action] in the Circuit Court of Jefferson County (Bessemer Division), Alabama. This case was brought pursuant to [Ala. Code 1975,] § 6-5-410, which is the Wrongful Death Statute of Alabama. According to the Wrongful Death Act, any damages recovered must be distributed according to the Statute of Distributions. Because my sister was not married at the time of her death and had no children, I understand that all of the proceeds from the wrongful death case pass to her heirs pursuant to [Ala. Code 1975,] § 43-8-42(1). Pursuant to this statute, all proceeds will pass to the heirs as long as they are of the same degree of kinship and then they take equally.

"7. Therefore, all siblings of Willie Mae Graves would share equally in the proceeds. I understand and agree that the list of heirs above is a complete and final list. I affirm that I do not have any knowledge of any other spouse, children, siblings or heirs of Willie Mae Graves. I further attest and affirm that all of the listed heirs are true and accurate heirs of Willie Mae Graves, pursuant to [Ala. Code 1975,] § 43-8-48. Therefore, by signing this declaration, I attest and affirm that I agree to this distribution, I agree with the accuracy of the list of heirs, I have no knowledge of any additional heirs, and I would waive any potential legal claim based on any assertion that any of the listed heirs are not legal heirs entitled to a share of these wrongful death proceeds."

6

On June 28, 2012, Kirksey, Thompson, and Gardner filed acknowledgments of the receipt of a distributive share of the wrongful-death-settlement proceeds. On the same day, the probate court issued a certificate of discharge stating that Kirksey "is hereby discharged and is released, in so far as her liability appears from her account, evidences and reports filed in this court."

Sometime thereafter, the omitted heirs learned about the distribution of the wrongful-death-settlement proceeds and filed in the probate court an "emergency petition to reopen estate, set aside discharge, appoint county administrator to handle estate and for other relief." In their petition, the omitted heirs challenged Kirksey's distribution of the wrongful-death-settlement proceeds. Specifically, the omitted heirs argued that they are heirs of Graves, known to Kirksey at the time of her appointment as administrator ad litem, and that, therefore, they are entitled to a share of the wrongful-death-settlement proceeds along with Kirksey, Thompson, and Gardner. The omitted heirs argued that the "estate need[ed] to be reopened to set aside the discharge that was entered," pursuant to Rule 60(b), Ala. R. Civ. P., but they did not

7

specify which subpart of Rule 60(b) applied to their petition. The omitted heirs' petition asked the probate court to: 1) reopen the case, 2) set aside the certificate of discharge of Kirksey from her duties as administrator ad litem, 3) require Kirksey to make an accounting of the receipts and disbursements of the wrongful-death-settlement proceeds, 4) order Kirksey to refund all sums overpaid, whether to her or to others, 5) appoint the county administrator to represent Graves's estate, 6) order Gardner and Thompson to immediately repay any overpayment, and 7) order other appropriate relief.

On February 4, 2013, Gardner filed an objection to the omitted heirs' petition. Gardner argued that the petition was untimely and improper for failing to allege an applicable reason for relief under Rule 60(b), Ala. R. Civ. P. Gardner also argued that the petition should be denied because, she argued, the omitted heirs provided no evidence to substantiate their claim that the are heirs of Graves.

On February 5, 2013, the omitted heirs amended their petition and alleged that Kirksey had perpetrated a fraud on the probate court by swearing to the probate court that she, Thompson, and Gardner constituted Graves's heirs and that she

8

had, therefore, distributed the wrongful-death-settlement proceeds in accordance with the statute of distributions, when Kirksey had actually deprived the omitted heirs of their portion of the wrongful-death-settlement proceeds. Accordingly, the omitted heirs alleged that they were entitled to relief pursuant to § 43-8-5, Ala. Code 1975, which states:

> "Whenever fraud has been perpetrated in connection with any proceeding or in any statement filed under this chapter or if fraud is used to avoid or circumvent the provisions or purposes of this chapter, any person injured thereby may obtain appropriate relief against the perpetrator of the fraud or restitution from any person (other than a bona fide purchaser) benefitting from the fraud, whether innocent or not. Any proceeding must be commenced within one year after the discovery of the fraud or from the time when the fraud should have been discovered, but no proceeding may be brought against one not a perpetrator of the fraud later than five years after the time of the commission of the fraud. This section has no bearing on remedies relating to fraud practiced on a decedent during his lifetime which affects the succession of his estate."

On February 25, 2013, Keith T. Belt, Jr., and the Belt Law Firm, P.C. (hereinafter collectively referred to as "Belt"), who had formerly represented Kirksey in this matter,[2] filed a complaint interpleading a portion of the wrongful-

_____

[2]Belt represented Kirksey through her discharge as administrator ad litem. On February 14, 2013, Kirksey retained current counsel.

9

death-settlement proceeds and seeking declaratory relief, naming Kirksey, Thompson, Gardner, and the omitted heirs as defendants.[3] Belt alleged that he learned of the omitted heirs on November 26, 2012, after the wrongful-death-settlement proceeds had been distributed to Kirksey, Thompson, and Gardner. Belt alleged that Kirksey, Thompson, and Gardner had received twice as much of the wrongful-death-settlement proceeds as they should have and that he had taken immediate steps to obtain repayment of the distributed funds upon learning of the existence of the omitted heirs. Belt alleged that Kirksey returned $233,903.17, half of the amount of the wrongful-death-settlement proceeds she had received, and that Gardner returned $10,000, which sums Belt held in trust; Belt did not state that Thompson returned any of the funds distributed to her. Belt deposited with the probate court the $243,903.17 of the wrongful-death-settlement proceeds he had received from Kirksey and Gardner and requested that the probate court accept the interpleaded funds, enter a judgment declaring the rights and obligations as between and among the

---

[3]Belt alleged that Graves's brother John McLemore, Sr., had a son named Jeremy, last name unknown, whom Belt named as a defendant. However, the omitted heirs denied that John McLemore, Sr., had a son named Jeremy.

10

defendants; order that Belt be released and discharged from any and all liability, duty, or other obligation to Kirksey, Thompson, Gardner, and the omitted heirs; and award Belt attorney fees and costs associated with the complaint from the interpleaded funds. Kirksey, Thompson, Gardner, and the omitted heirs separately answered Belt's interpleader complaint and objected to Belt's requested relief on numerous grounds -- including the probate court's alleged lack of subject-matter jurisdiction over Belt's complaint. Subsequently, Belt filed a motion for a discharge from the interpleader action. Belt's motion has been held in abeyance pursuant to an agreement of the parties.

On February 28, 2013, Gardner filed an objection to the omitted heirs' petition, arguing that § 43-8-5 was not applicable because, she argued, any false representation made to the probate court concerning the number and identity of Graves's heirs was not the product of fraud on the probate court.

On April 12, 2013, Thompson filed a response to the omitted heirs' petition and raised the same objections Gardner had raised in her responses to the omitted heirs' original and

amended petitions. On June 17, 2013, Thompson filed a motion to dismiss the omitted heirs' petition under Rule 60(b), Ala. R. Civ. P., as being untimely; she also alleged that § 43-8-5 was inapplicable because, Thompson said, there had been no fraud on the probate court.

On June 17, 2013, Kirksey filed a response to the omitted heir's petition and made the same arguments as those made by Gardner and Thompson; she additionally argued that the probate court had "lost jurisdiction over the parties and subject matter."

On June 18, 2013, the probate court conducted a hearing on the omitted heirs' petition.

On July 8, 2013, the omitted heirs filed a complaint against Kirksey, Gardner, and Thompson in the Jefferson Circuit Court, asserting various claims related to Kirksey's alleged improper distribution of the wrongful-death-settlement proceeds.[4]

---

[4]We note that by filing their action, the omitted heirs essentially sought the same relief in the Jefferson Circuit Court they are seeking in the probate court. Mainly, the omitted heirs have sought to hold Kirksey liable for her alleged improper distribution of the wrongful-death-settlement proceeds.

On August 26, 2013, the probate court issued an order granting the omitted heirs' motion to "reopen" Graves's estate, setting aside its order discharging Kirksey as administrator ad litem, and appointing the county administrator to preside over future proceedings -- which the probate court identified as a redistribution of the wrongful-death-settlement proceeds; the probate court also denied Kirksey's motion to dismiss Belt's interpleader complaint for lack of subject-matter jurisdiction.

On September 25, 2013, the omitted heirs filed a motion challenging the probate court's subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds, requesting that the probate court vacate its August 26, 2013, order insofar as it "reopened" Graves's estate and appointed the county administrator to preside over the proceedings, because letters of administration had never been issued to initially open Graves's estate, and requesting that the probate court transfer the interpleaded funds to the Jefferson Circuit Court pending a determination in the action in that court that had been filed by the omitted heirs.

On September 26, 2013, Kirksey filed a motion asking the probate court to reconsider its August 26, 2013, order and to enter a new order finding that she had not committed a fraud on the probate court.

On November 1, 2013, Belt filed a response to the omitted heirs' September 25, 2013, motion and argued that the probate court had jurisdiction over the interpleader action.

On November 25, 2013, the probate court entered the following order:

> "This matter comes before the Court on two separate motions. On November 5, 2013, the Court heard oral argument on the motion of Defendant Bessie Kirksey, seeking to have the Court reconsider its Order of August 26, 2013, reopening the Estate of Willie Mae Graves, as well as the motion of the [omitted heirs] seeking to have the Court determine whether ... it has jurisdiction to continue to preside over this matter. A third Motion filed by Interpleader Plaintiffs Keith T. Belt, Jr. and the Belt Law Firm, P.C. seeking a discharge will be held in abeyance per the agreement of all counsel.
>
> "The motions now before the court raise issues of whether the appointment of an Administrator ad Litem granted such AAL the authority to maintain and settle a wrongful death case citing the concurring opinion of Justice Bolin in Golden Gate Nat. Senior Care, LLC v. Roser, 94 So. 3d 365 (Ala. 2012). The cited opinion is admitted to be mere dicta and this court is compelled to follow the law as stated in the controlling case of Affinity Hospital, LLC v. Williford, 21 So. 3d 712 (Ala. 2009).

14

"The motions raise the issue of this court's jurisdiction to act in this case relying principally upon Ex parte Rodgers, [141 So. 3d 1038 (Ala. 2013),] and Justice Murdock's special concurring opinion in Ex parte Taylor, 93 So. 3d 118 (Ala. 2012). Neither of these opinions is controlling in this case. The Rodgers case holds that an administrator, in his or her capacity as administrator, may not be compensated from wrongful death proceeds based upon the statutory formula for compensation of personal representatives because the proceeds from the wrongful death recovery are not assets of the estate. It was not a jurisdiction case and the appeal in that case was from the Circuit Court for Jefferson County and raised no jurisdictional issue. In fact, Justice Bolin wrote a specially concurring opinion suggesting that while the personal representative may not be compensated in his or her capacity as personal representative of the decedent's estate, he or she may and should be compensated as a trustee.

"The movants next rely upon the special concurring opinion of Justice Murdock in Ex parte Taylor, supra, in which Justice Bolin concurred. The issue of probate jurisdiction was not before the court in that case and it should be emphasized that the rationale in the special concurring opinion, while well stated, is one side of the issue, and is not a holding of the Supreme Court nor does it necessarily state the opinion of a majority of the justices. In that opinion, after citing 12-13-1 [et seq., Ala. Code 1975,] Justice Murdock states,

"'The foregoing categories of jurisdiction concern matters relating to the administration of a decedent's estate; they do not authorize the probate court to entertain a motion concerning the approval of the settlement of a wrongful-death claim by a personal representative or to enter an order concerning the distribution of the proceeds from a settlement in such an

15

action as part of the final settlement of
the estate. Likewise, matters concerning
the personal representative's settlement of
a wrongful-death claim and the distribution
of the proceeds therefrom do not fall
within the Mobile Probate Court's general
equity jurisdiction, which is limited to
matters of equity "in the administration of
the estates," Act No. 91-131, Ala. Acts
1991, and to "any proceeding involving a
testamentary or inter vivos trust." Ala.
Code 1975, § 19-3B-203.'

"However, the reference to Ala. Code 1975, §
19-3B-203 makes no reference to the interpretation of
that code section construed by the full Court in
Regions v. Reed, 60 So. 3d 868 (Ala. 2010), in an
opinion also authored by Justice Murdock:

"'Thus, the probate courts of
Jefferson, Mobile, and Shelby Counties have
concurrent jurisdiction with the circuit
courts of those counties to hear any
proceeding brought by a trustee or
beneficiary concerning the administration
of a trust. In other words, the reference
in subsection (b) of § 19-3B-203 to probate
courts that have been granted "statutory
equitable jurisdiction" is an identifying
reference, not a limitation on the
jurisdiction of the courts so identified.
It is those probate courts to which
subsection (b) grants "concurrent
jurisdiction" with the circuit courts to
hear actions concerning the administration
of a trust brought by a trustee or
beneficiary.'

"60 So. 3d at 880.

"There is a limitation in 19-3B-203(b) to inter
vivos and testamentary trusts. While the concurring

16

opinion in <u>Ex parte Taylor</u> concludes that the trust or quasi trust formed for the proceeds of a wrongful death recovery is neither, it may also be argued that the trust is an inter vivos trust.

"But the jurisdiction of this court in this case is not dependant upon the Uniform Trust Code. Ala. Code 1975, § 43-2-111 is a part of the probate code of this state. It is contained in Article 5 of Title 43 which is titled 'Liability of Executors and Administrators' and states, 'The personal representative <u>and the sureties on his bond</u> are liable to the parties in interest for the due and legal distribution of all damages recovered by such representative under sections ... 6-5-410[, Ala. Code 1975, the wrongful-death act]... and are subject to all remedies which may be pursued against such representative and sureties for the due administration of personal assets.' (Emphasis supplied). The sureties on the bond are bound to the probate court and no other court. The probate court has jurisdiction over the administrator and is the only party in interest who can call upon the surety for the payment of the penal sum of the bond. One of the remedies referred to in the code section which is available to the persons of interest who are wronged by the improper distribution of funds held by the administrator is to obtain an order from the probate court directing the proper administration of the funds and calling in the bond for failure to do so. It is clear that this court has original general jurisdiction to enforce this section of the code.

"With regard to the motion to reconsider, the Court holds that its previous finding of fraud on the Court is properly supported by the Court's record. There is no question that the Court's prior orders regarding the Estate of Willie Mae Graves relied upon information supplied by the Administrator ad Litem, Bessie Kirksey, in open court which has now been proven to be inaccurate. Regardless of her position that she did not intend to cause harm while making

17

those statements, the statements were nonetheless relied upon by the Court thereby creating a fraud on the Court as a matter of law. This court has now heard the arguments of counsel on its motion to reconsider but has heard no evidence controverting the evidence taken in open court which induced this court to close the estate. The information then presented has been proven in open court to be untrue and this court has ruled that the order discharging the administrator ad litem is due to be and has been set aside and the estate has been reopened. There being no new or additional evidence presented to this court, the motion to reconsider is hereby denied.

"For the foregoing reasons, and the Court's finding that it does have jurisdiction to continue to preside over the matters which are currently before the Court, the motion to construe jurisdiction is hereby denied. The Court finds that jurisdiction will be maintained in the Probate Court.

"There being no just cause for delay, this is determined to be a final order under [Rule 54(b), Ala. R. Civ. P.]."

Kirksey appealed; the omitted heirs cross-appealed, which cross-appeal we are treating as a petition for a writ of mandamus.

## Discussion

Initially, we note:

"Not every order has the requisite element of finality that can trigger the operation of Rule 54(b)[, Ala. R. Civ. P.]. Moss v. Williams, 747 So. 2d 905 (Ala. Civ. App. 1999). Therefore, a trial court should certify a nonfinal order as final pursuant to Rule 54(b) only 'where the failure to do so might have a harsh effect.' Brown v. Whitaker

18

Contracting Corp., 681 So. 2d 226, 229 (Ala. Civ. App. 1996) (overruled on other grounds, Schneider Nat'l Carriers, Inc. v. Tinney, 776 So. 2d 753 (Ala. 2000)). Rule 54(b) certifications are not to be entered routinely and should be made only in exceptional cases. Parrish v. Blazer Fin. Servs., Inc., 682 So. 2d 1383 (Ala. Civ. App. 1996). '"Appellate review in a piecemeal fashion is not favored."' Harper Sales Co. v. Brown, Stagner, Richardson, Inc., 742 So. 2d 190, 192 (Ala. Civ. App. 1999) (quoting Brown v. Whitaker Contracting Corp., 681 So. 2d at 229)."

Goldome Credit Corp. v. Player, 869 So. 2d 1146, 1148 (Ala. 2003).

"For an order to be susceptible to Rule 54(b) certification, the order must dispose of at least one of a number of claims or one of multiple parties, must make an express determination that there is no just reason for delay, and must expressly direct the entry of a judgment as to that claim or that party. Jakeman v. Lawrence Group Mgmt. Co., 82 So. 3d 655, 659 (Ala. 2011) (citing Committee Comments on 1973 Adoption of Rule 54(b), Ala. R. Civ. P.). ...

"'Pursuant to Rule 54(b), a trial court may direct "the entry of a final judgment as to one or more but fewer than all of the claims or parties." But Rule 54(b) makes an order final -- and therefore appealable -- "only where the trial court 'has completely disposed of one of a number of claims, or one of multiple parties.'" Tanner v. Alabama Power Co., 617 So. 2d 656, 656 (Ala. 1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)) (emphasis added in Tanner). In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the

19

1130385, 1130403

> claims as they relate to at least one party.'
>
> "Haynes v. Alfa Fin. Corp., 730 So. 2d 178, 181 (Ala. 1999). 'An appeal will not lie from a nonfinal judgment.' Baugus v. City of Florence, 968 So. 2d 529, 531 (Ala. 2007)."

Ex parte Noland Hosp. Montgomery, LLC, 127 So. 3d 1160, 1165-66 (Ala. 2012).

The probate court's November 25, 2013, order did not completely adjudicate a claim. Accordingly, the probate court's order was not a final judgment, and the probate court's Rule 54(b), Ala. R. Civ. P., certification of that nonfinal order was improper. "An appeal will not lie from a nonfinal judgment." Baugus v. City of Florence, 968 So. 2d 529, 531 (Ala. 2007). We therefore dismiss Kirksey's appeal (case no. 1130385).

Although an appeal will not lie from a nonfinal judgment, in certain instances a party can challenge a nonfinal order by a petition for a writ of mandamus. This Court has treated a notice of appeal as a petition for a writ of mandamus, Morrison Rests., Inc. v. Homestead Vill. of Fairhope, Ltd., 710 So. 2d 905 (Ala. 1998), and, conversely, treated a petition for a writ of mandamus as a notice of appeal, Ex

20

parte Burch, 730 So. 2d 13 (Ala. 1999). As noted in F.L. Crane & Sons, Inc. v. Malouf Construction Corp., 953 So. 2d 366 (Ala. 2006), this Court's actions in the above cases is consistent with Rule 1, Ala. R. App. P., which provides: "[These rules] shall be shall be construed so as to assure the just, speedy, and inexpensive determination of every appellate proceeding on its merits." Likewise, Rule 2(b), Ala. R. App. P., also calls for the suspension of the requirements or provisions of any of the Rules of Appellate Procedure "[i]n the interest of expediting decision." In F.L. Crane & Sons, this Court explained the reasoning for using the flexibility afforded by Rules 1 and 2 in the situations presented in that case and in Morrison Restaurants, Ex parte Burch, and the present case:

"In Ex parte Burch, we treated a petition for the writ of mandamus addressed to a trial court's denial of a motion in limine as a notice of appeal. We stated in Burch that there is 'no bright-line test for determining when this Court will treat a particular filing as a mandamus petition and when it will treat it as a notice of appeal.' 730 So. 2d at 146. Instead, we consider the facts of the particular case in deciding whether to treat the filing as a petition or as an appeal:

"'The question we come to, then is this: Do the circumstances of this case make it such that the policies set forth in Rule 1[,

21

Ala. R. App. P.,] will be served by resolving the matter presented to us? Or, will those policies be better served by requiring, as we do in the normal case, strict compliance with our appellate rules and thus not reviewing the trial court's interlocutory ruling?'

"730 So. 2d at 147.

"In Burch, we treated the petition as a petition for a permissive appeal under Rule 5, Ala. R. App. P., because the hearing transcript revealed the trial court's belief that this Court's resolution of the motion in limine was 'important to materially advancing th[e] litigation.' 730 So. 2d at 147-48. Similarly, we believe that deciding the issue of the enforceability of this forum-selection clause on its merits will further the 'just, speedy, and inexpensive determination ... on [the] merits' of the case favored by Rule 1, Ala. R. App. P."

953 So. 2d at 372.

As in Ex parte Burch, consideration of the subject-matter jurisdiction of the probate court -- an issue raised by the omitted heirs in their cross-appeal -- is important to materially advancing this litigation. Therefore, although we are dismissing Kirksey's appeal, we treat the omitted heirs' cross-appeal as a petition for a writ of mandamus requesting this Court to direct the probate court to dismiss this case on the basis that that court lacks subject-matter jurisdiction

22

over the distribution of the wrongful-death-settlement proceeds.

We review the omitted heirs' petition according to the following standard of review:

> "'Mandamus is a drastic and extraordinary writ, to be issued only where there is (1) a clear legal right in the petitioner to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) properly invoked jurisdiction of the court.' Ex parte Integon Corp., 672 So. 2d 497, 499 (Ala. 1995). The question of subject-matter jurisdiction is reviewable by a petition for a writ of mandamus. Ex parte Flint Constr. Co., 775 So. 2d 805 (Ala. 2000)."

Ex parte Liberty Nat'l Life Ins. Co., 888 So. 2d 478, 480 (Ala. 2003).

In its November 25, 2013, order, the probate court concluded that "it does have jurisdiction to continue to preside over the matters which are ... before" it. The matters that were before the probate court when it entered that order were Kirksey's motion to reconsider the probate court's August 26, 2013, order -- which "reopened" Graves's estate, set aside its order discharging Kirksey as administrator ad litem, appointed the county administrator to preside over future proceedings, and denied Kirksey's motion

23

to dismiss Belt's interpleader complaint for lack of subject-matter jurisdiction -- as well as the omitted heirs' September 25, 2013, motion -- which challenged the probate court's subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds. The nucleus of each of those matters is the same: the alleged improper distribution of the wrongful-death-settlement proceeds. As explained below, the probate court's conclusion that the settlement of the wrongful-death action was on behalf of the <u>estate</u> of the decedent led it to believe that it had jurisdiction over the distribution of the wrongful-death-settlement proceeds.[5]

A wrongful-death action is not brought by the estate of the decedent; accordingly, the proceeds from a wrongful-death action are not part of the decedent's estate. As Justice

---

[5]We note that the question of Kirksey's capacity, as administrator ad litem, to bring the wrongful-death action is not before this Court. In <u>Affinity Hospital, LLC v. Williford</u>, 21 So. 3d 712, 718 (Ala. 2009), this Court held that, in maintaining a wrongful-death action, a plaintiff was "acting in her capacity as an administrator ad litem, was a 'personal representative' within the meaning of Ala. Code 1975, § 6-5-410, and was, therefore, vested with the authority conferred by that section to file a wrongful-death action." Accordingly, we limit our analysis to the narrow issue involving the subject-matter jurisdiction of the probate court to oversee the distribution of the wrongful-death-settlement proceeds received by Kirksey as the personal representative of the decedent.

24

1130385, 1130403

Murdock noted in his special concurrence to Ex parte Taylor, 93 So. 3d 118, 118 (Ala. 2012)(Murdock, J., concurring specially):

> "[A]n estate cannot file a wrongful-death action. See Ala. Code 1975, § 6-5-410; Downtown Nursing Home, Inc. v. Pool, 375 So. 2d 465, 466 (Ala. 1979) (noting that the 'right' to file a wrongful-death action is 'vested in the personal representative alone').[1] As a corollary, the proceeds from the settlement of the wrongful-death claim that arose out of Newman's death are not a part of Newman's estate. See, e.g., Steele v. Steele, 623 So. 2d 1140, 1141 (Ala. 1993) ('[D]amages awarded pursuant to [§ 6-5-410] ... are not part of the decedent's estate.').
>
> "This Court has long recognized that,
>
> "'[i]n prosecuting [wrongful-death] actions, the personal representative does not act strictly in his capacity as administrator of the estate of his decedent, because he is not proceeding to reduce to possession the estate of his decedent, but rather he is asserting a right arising after his death, and because the damages recovered are not subject to the payment of the debts or liabilities of the decedent. He acts rather as an agent of legislative appointment for the effectuation of the legislative policy....'
>
> "Hatas v. Partin, 278 Ala. 65, 68, 175 So. 2d 759, 761 (1965); see also Steele, 623 So. 2d at 1141 (noting that the 'personal representative ... act[s] as agent by legislative appointment for the effectuation of a legislative policy of the prevention of homicides through the deterrent value of the infliction of punitive damages'). 'Upon a recovery, [the personal representative] acts as a

25

quasi trustee for those who are entitled thereto under the statute of distribution. Such damages are not subject to administration and do not become part of the deceased's estate.' United States Fid. & Guar. Co. v. Birmingham Oxygen Serv., Inc., 290 Ala. 149, 155, 274 So. 2d 615, 621 (1973). Indeed, commenting on an earlier version of Alabama's wrongful-death statute, this Court noted that the legislature has

> "'impose[d] upon the administrator a trust separate and distinct from the administration. The trust is not for the benefit of the estate, but of the widow, children, or next of kin of the deceased. The administrator fills this trust, but he does not do it in the capacity of representative of the estate. It is altogether distinct from the administration, notwithstanding it is filled by the administrator.'

"Hicks v. Barrett, 40 Ala. 291, 293 (1866) (discussing Ala. Code of 1852, § 1938).

"_____

"[1]Because we do not have the record on appeal before us, however, I cannot confirm whether the wrongful-death action was filed by Jerry, as personal representative of Newman's estate, or by the estate itself, as the Court of Civil Appeals states in its opinion. Concomitantly, in reference to the Court of Civil Appeals' description of litigation-settlement-restriction language contained in Jerry's letters of administration, the probate court has no power to issue such a restriction as to the settlement of litigation in which the estate has no interest, i.e., a wrongful-death action. ..."

93 So. 3d at 119.

26

1130385, 1130403

With these principles in mind, we now address whether the probate court had the authority to oversee the distribution of the wrongful-death-settlement proceeds received by Kirksey and to condition her discharge as administrator ad litem on the probate court's approval of Kirksey's distribution of the wrongful-death-settlement proceeds -- funds that were never part of Graves's estate and in which the probate court has no interest; we hold that it did not.

The legislature established the subject-matter jurisdiction of the probate courts in § 12-13-1, Ala. Code 1975, which states:

> "(a) The probate court shall have original and general jurisdiction as to all matters mentioned in this section and shall have original and general jurisdiction as to all other matters which may be conferred upon them by statute, unless the statute so conferring jurisdiction expressly makes the jurisdiction special or limited.

> "(b) The probate court shall have original and general jurisdiction over the following matters:

> "(1) The probate of wills.

> "(2) The granting of letters testamentary and of administration and the repeal or revocation of the same.

> "(3) All controversies in relation to the right of executorship or of administration.

"(4) The settlement of accounts of executors and administrators.

"(5) The sale and disposition of the real and personal property belonging to and the distribution of intestate's estates.

"(6) The appointment and removal of guardians for minors and persons of unsound mind.

"(7) All controversies as to the right of guardianship and the settlement of guardians' accounts.

"(8) The allotment of dower in land in the cases provided by law.

"(9) The partition of lands within their counties.

"(10) The change of the name of any person residing in their county, upon his filing a declaration in writing, signed by him, stating the name by which he is known and the name to which he wishes it to be changed.

"(11) Such other cases as jurisdiction is or may be given to such courts by law in all cases to be exercised in the manner prescribed by law.

"(c) All orders, judgments and decrees of probate courts shall be accorded the same validity and presumptions which are accorded to judgments and orders of other courts of general jurisdiction."

Additionally, the Jefferson Probate Court "has concurrent jurisdiction with the circuit court in any proceeding

1130385, 1130403

involving a testamentary or inter vivos trust." § 19-3B-203,

Ala. Code 1975. See Jett v. Carter, 758 So. 2d 526, 529 (Ala.

1999)("Act No. 1144, Ala. Acts 1971 (Reg. Session), a local

act, applies to cases originating in the Jefferson Probate

Court. It grants to the Jefferson Probate Court 'general

jurisdiction concurrent with that of the Circuit Courts of

this State, in equity, in the administration of the estates of

deceased persons, minors and insane or non compos mentis

persons, including testamentary trust estates.' (§ 1.)"

(emphasis added)).

As Justice Murdock noted in his special concurrence in Ex

parte Taylor in relation to the subject-matter jurisdiction of

the Mobile Probate Court in a similar situation:

"The foregoing categories of jurisdiction[, §§
12-13-1(b)(3)-(5), Ala. Code 1975,] concern matters
relating to the administration of a decedent's
estate; they do not authorize the probate court to
entertain a motion concerning the approval of the
settlement of a wrongful-death claim by a personal
representative or to enter an order concerning the
distribution of the proceeds from a settlement in
such an action as part of the final settlement of the
estate. Likewise, matters concerning the personal
representative's settlement of a wrongful-death claim
and the distribution of the proceeds therefrom do not
fall within the Mobile Probate Court's general equity
jurisdiction, which is limited to matters of equity
'in the administration of the estates,' Act No.
91-131, Ala. Acts 1991, and to 'any proceeding

29

> involving a testamentary or inter vivos trust.' Ala. Code 1975, § 19-3B-203."

93 So. 3d at 122.

However, in the present case, the probate court did not hold that it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds pursuant to the legislature's general grant of jurisdiction under § 12-13-1. Rather, as set forth above, the probate court stated the following in regard to whether it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds:

> "There is a limitation in 19-3B-203(b) to inter vivos and testamentary trusts. While the concurring opinion in Ex parte Taylor concludes that the trust or quasi trust formed for the proceeds of a wrongful death recovery is neither, it may also be argued that the trust is an inter vivos trust."

Although the probate court did not address the question whether it had subject-matter jurisdiction under § 19-3B-203, Ala. Code 1975, a trust formed by the receipt of the proceeds in a wrongful-death action cannot be construed as an inter vivos trust, which is a "[t]rust created during lifetime of settlor and to become effective in his lifetime as contrasted with a testamentary trust which takes effect at death of

30

1130385, 1130403

settlor or testator."  Black's Law Dictionary 821 (6th ed. 1990).

Regardless, the probate court further stated that it had subject-matter jurisdiction over the distribution of the wrongful-death-settlement proceeds pursuant to § 43-2-111, Ala. Code 1975, which provides:

> "The personal representative and the sureties on his bond are liable to the parties in interest for the due and legal distribution of all damages recovered by such representative under sections ... 6-5-410 ... and are subject to all remedies which may be pursued against such representative and sureties for the due administration of personal assets."

Section 43-2-111 authorizes an action against a personal representative regarding the distribution of proceeds of a wrongful-death action; it does not vest the probate court with subject-matter jurisdiction to oversee the distribution of the proceeds of a wrongful-death action, in which the estate of the decedent has no interest.  Accordingly, the probate court did not have subject-matter jurisdiction under § 12-13-1, § 43-2-111, or § 19-3B-203 over the settlement of the wrongful-death action and Kirksey's distribution of the wrongful-death-settlement proceeds.  Rather, subject-matter jurisdiction lies with the circuit court.

31

Therefore, the probate court does not have subject-matter jurisdiction over the interpleader action because the interpleaded funds are not part of Graves's estate but are the proceeds of the settlement of the wrongful-death action. Accordingly, Belt's interpleader action is due to be dismissed.

Further, although a probate court has subject-matter jurisdiction over a petition to vacate its discharge of an administrator ad litem, in this case we note that the only basis for doing so was to attempt to correct Kirksey's alleged improper distribution of the wrongful-death-settlement proceeds. Likewise, the probate court's appointment of the county administrator and its "reopening" of Graves's estate -- when no letters of administration have been issued -- were also based on its attempt to oversee the distribution of the wrongful-death-settlement proceeds, which the probate court has no authority to do. Accordingly, the probate court acted beyond its authority in taking those actions. Therefore, the omitted heirs have a clear legal right to the relief they seek -- dismissal of the case for lack of subject-matter jurisdiction.

32

## Conclusion

For the reasons explained above, the probate court did not have subject-matter jurisdiction to oversee either the settlement of the wrongful-death action or Kirksey's distribution of the wrongful-death-settlement proceeds pursuant to the statute of distributions. Accordingly, the actions of the probate court regarding the settlement of the wrongful-death action and Kirksey's distribution of the proceeds of the wrongful-death action are void. Therefore, we grant the omitted heirs' petition for a writ of mandamus and direct the probate court to vacate its August 26, 2013, and November 25, 2013, orders and to dismiss Belt's interpleader action. Furthermore, we direct the probate court to vacate its May 4, 2012, order insofar as it purported to approve the wrongful-death settlement and order the distribution of the funds to Kirksey, Thompson, and Gardner.

1130385 -- APPEAL DISMISSED.

Bolin, Shaw, Main, Wise, and Bryan, JJ., concur.

Murdock, J., concurs specially.

Moore, C.J., and Stuart, J., concur in the result.

1130403 -- PETITION GRANTED; WRIT ISSUED.

1130385, 1130403

Main, Wise, and Bryan, JJ., concur.

Bolin, Murdock, and Shaw, JJ., concur specially.

Stuart, J., concurs in the result.

Moore, C.J., dissents.

1130385, 1130403

BOLIN, Justice (concurring specially in case no. 1130403).

I note initially that I concur with this Court's main opinion, including its conclusion that the omitted heirs' cross-appeal be treated as a petition for a writ of mandamus because the probate court's November 25, 2013, order was not a judgment subject to certification of finality under Rule 54(b), Ala. R. Civ. P.; the question of a court's subject-matter jurisdiction is reviewable by a petition for a writ of mandamus.

Moreover, as a former probate judge, I am experienced and familiar with the interplay of opening a decedent's estate in the probate court for the primary purpose of allowing a personal representative to file a wrongful-death claim in the circuit court. Although I concur fully with this Court's main opinion--vacating the probate court's orders based on that court's lack of subject-matter jurisdiction to oversee the distribution of the wrongful-death-settlement proceeds--I write specially to note that on July 11, 2011, when the learned probate judge appointed Bessie Kirksey as the administrator ad litem for the purpose of gathering "information to investigate a wrongful death claim," the judge

35

was informed generally by this Court's decision in Affinity Hospital, L.L.C. v. Williford, 21 So. 3d 712 (Ala. 2009)(holding that the probate court's order appointing an administrator ad litem to investigate a possible wrongful-death action on behalf of the deceased patient's estate also granted administrator ad litem the authority to file such an action). As demonstrated in the present opinion, this Court has subsequently, and more narrowly, construed the plain wording of § 6-5-410, Ala. Code 1975, to recognize a personal representative as the proper party to initiate a wrongful-death action. It is my judgment that Affinity Hospital, by improperly allowing an administrator ad litem (again, appointed by the probate court for a specific purpose) to pursue a wrongful-death action, blurred the distinction between the probate court's role and the circuit court's role in wrongful-death actions, because it is the probate court that generally monitors the actions of its own appointees. The confusion created was exacerbated by the fact that it is the probate court where heirship is usually determined, although the beneficiary recipients (heirs at law of the decedent pursuant to the statute of distributions) of damages as a

36

result of a circuit court wrongful-death action are one and the same. It is my judgment that the above combined to substantially create much of the ensuing uncertainty as to whether the probate court here had any oversight of, or, put a better way, jurisdiction to judicially supervise the safeguarding and proper disbursement of, the corpus created by a successful wrongful-death action.

Whether justified or not, the confusion in this area of estate/wrongful-death law has caused this Court to ultimately remove any doubt by delineating that a probate court's jurisdiction, in overseeing matters concerning the administration of an estate, does not include those matters pertaining to the settlement or the distribution of the proceeds of a wrongful-death action, because such proceeds are not part of the decedent's estate. See, e.g., Ex parte Taylor, 93 So. 3d 118 (Ala. 2012), in which Justice Murdock wrote specially to discuss the role delegated to a personal representative by § 6-5-410, Ala. Code 1975, and the proper distribution of proceeds derived from a wrongful-death action, when the probate court has issued an order concerning the distribution of those proceeds; Golden Gate Nat'l Senior Care,

37

LLC v. Roser, 94 So. 3d 365 (Ala. 2012), a case in which I concurred specially to express my judgment that a wrongful-death action may be instituted only by a personal representative, and not by an administrator ad litem, referencing Justice Murdock's special writing in Ex parte Taylor explaining the role of a personal representative in the context of a wrongful-death action; Ex parte Rodgers, 141 So. 3d 1038, 1042 (Ala. 2013), another case in which I concurred specially and referenced Justice Murdock's special writing in Ex parte Taylor; and, finally, Ex parte Wilson, 139 So. 3d 161 (Ala. 2013), in which I concurred specially regarding the inability of an administrator ad litem to initiate a wrongful-death action when the question of the capacity of the administrator ad litem to bring such an action is properly and timely presented to the trial court.

It is always easy to state what the law is, or what a trial court should or should not have properly done, with the cool reflection afforded an appellate court. I write specially to note, however, that when the probate judge appointed an administrator ad litem on July 11, 2011, he was acting in conformity with this Court's precedent in Affinity Hospital,

38

which empowered a probate court appointee to institute a wrongful-death proceeding without there being in existence a decedent's estate or a properly appointed personal representative. Although the subsequent responsibility for the proper conduct of a wrongful-death action should have been borne by the circuit court, the probate judge in this proceeding did not have the benefit of the above-cited and later released special writings, none of which was controlling precedent, as the probate court noted in its November 25, 2013, order.

In conclusion, it is no surprise to me that the probate court cautiously intervened and the instant scenario occurred, given (1) that the probate court, in appointing the administrator ad litem, was guided by this Court's decision in Affinity Hospital; (2) that the administrator ad litem appointed by the probate court was empowered to litigate a wrongful-death action to a jury verdict or effectuate a settlement of potentially a large corpus of funds, despite the fact that there was no estate proceeding determining heirship and, in contravention of § 6-5-410, Ala. Code 1975, had been no appointment of a personal representative; and (3) that,

39

most importantly, the probate judge was bound by section C of the Compliance provision of the Canons of Judicial Ethics pertaining to probate judges, which states that "[a] probate judge should consider himself the conservator of all estates under his jurisdiction." "Compliance with the Canons of Judicial Ethics," following Canon 7, Canons of Judicial Ethics. Although there was no "estate" before the probate judge as referred to in the Canon, there was certainly the appointment of a party who, given the state of the law, could create a corpus of funds payable to heirs -- as close to a decedent's intestate estate as is possible without the actual creation thereof.

1130385, 1130403

MURDOCK, Justice (concurring specially).

The main opinion concludes its review of the propriety of the probate court's Rule 54(b), Ala. R. Civ. P., certification of its November 25, 2013, order by reasoning that the probate court's order was not properly certifiable as a final, appealable judgment under Rule 54(b) because that order did not "completely adjudicate" a claim. ___ So. 3d at ___. To be clear, not only did the probate court's order not "completely" adjudicate a claim, it did not even "partially" adjudicate a claim. Indeed, to the contrary, it "undid" an otherwise final adjudication of a claim, thereby leaving that claim open for further consideration by the probate court. Our precedents specifically hold that, except in unique circumstances not present here, the grant of a Rule 60(b), Ala. R. Civ. P., motion is not appealable for this very reason, i.e., it vacates a final judgment and contemplates further proceedings in the trial court. See, e.g., Washington Mut. Bank, F.A. v. Campbell, 24 So. 3d 435, 439 (Ala. 2009) (noting that "[a]n order granting a Rule 60(b), Ala. R. Civ. P., motion generally is not appealable because 'further

41

proceedings are contemplated by the trial court.' <u>Ex parte</u> <u>Overton</u>, 985 So. 2d 423, 424 (Ala. 2007).").

The "claims" to which Rule 54(b) refers are the claims for substantive relief asserted by plaintiffs that create lawsuits. See Rule 54, Ala. R. Civ. P. (addressing "claims for relief ..., whether ... a claim, counterclaim, cross-claim, or third-party claim"). Rule 54(b) addresses orders that conclusively or finally dispose of such "claims," not orders that <u>reject defenses</u> asserted by defendants and thereby leave the plaintiff's claims that are the subject of the Rule 54(b) certification pending for further proceedings.

In the present case, the omitted heirs effectively occupied the position of defendants in relation to Bessie Kirksey's claims; they "defended" against Kirksey's claims, in part, by seeking to persuade the probate court to dismiss those claims for lack of subject-matter jurisdiction. The probate court did not do that. Although it did choose on the merits to <u>undo</u> its prior adjudication of Kirksey's claims, it denied the defendant's motion to dismiss Kirksey's claims on the ground, asserted by the omitted heirs, that the probate court lacked subject-matter jurisdiction over those claims.

42

Thus, the probate court entered an order rejecting the defense of lack of jurisdiction asserted by the omitted heirs, thereby keeping Kirksey's claims alive for further proceedings. Such an order is not an order otherwise subject to a certification of finality under Rule 54(b); it did not settle the parties' substantive rights in relation to one another. See, e.g., Banyan Corp. v. Leithead, 41 So. 3d 51, 54 (Ala. 2009) (holding that the trial court erred in certifying an order as a final, appealable judgment under Rule 54(b) because "the order ... did not completely dispose of any of the substantive claims in this case, nor did the order fully dispose of the claims as they relate to at least one party"). See also, e.g., State v. Brantley Land, L.L.C., 976 So. 2d 996, 999 (Ala. 2007) ("'"Only a fully adjudicated whole claim against a party may be certified under Rule 54(b)."'" (quoting James v. Alabama Coalition for Equity, Inc., 713 So. 2d 937, 942 (Ala. 1997), quoting in turn Sidag Aktiengesellschaft v. Smoked Foods Prods. Co., 813 F.2d 81, 84 (5th Cir. 1987) (emphasis omitted))); and Haynes v. Alfa Fin. Corp., 730 So. 2d 178, 181 (Ala. 1999) ("[F]or a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least

43

one claim or fully dispose of the claims as they relate to at least one party.").

The Chief Justice, in his special writing, expresses a reluctance to accept a petition for a writ of mandamus as the appropriate vehicle for seeking relief from this Court. He points to § 12-22-20, Ala. Code 1975, which he reads as permitting an appeal to this Court of the probate court's order. The language of § 12-22-20 quoted by the Chief Justice, however, expressly permits an appeal only as to a "final judgment, order or decree."

Nor does the decision of this Court in Watts v. Town of Green Valley, 282 Ala. 555, 213 So. 2d 398 (1968), support the notion that an appeal is available in this case. The judgment appealed in Watts, which the trial court there had refused to vacate, was a final judgment. That is, the judgment appealed in Watts had conclusively adjudicated the rights of the parties; the judgment had provided the plaintiffs the substantive relief requested in their complaint, i.e., an order requiring an election regarding the possible incorporation of a new town. Similarly, the appeal in McDonald v. Lyle, 270 Ala. 715, 121 So. 2d 885 (1960), was

44

from a judgment that had conclusively adjudicated the claims at issue in that case -- salary claims brought by county employees against various county commissioners.[6] The fact that the defenses asserted, but rejected by the trial court, in both Watts and McDonald happened to be jurisdictional defenses does not change the fact that the judgments entered by the trial courts in those cases and appealed to this Court were in and of themselves final judgments that finally decided the claims asserted by the plaintiffs in those cases. The order of the probate court here vacating its otherwise final judgment adjudicating the claims of certain heirs and requiring further proceedings as to those claims is the opposite.

---

[6]Both Watts and McDonald were decided by this Court prior to the promulgation of Rule 54.

1130385 and 1130403

SHAW, Justice (concurring specially in case no. 1130403).

The issue in these cases is whether the probate court possessed jurisdiction to oversee the actions of the "personal representative" pursuing a wrongful-death action in the circuit court. As the main opinion holds, it does not. I agree.

Justice Bolin, in his special writing, expresses, among other things, concern that this Court's holding in Affinity Hospital, L.L.C. v. Williford, 21 So. 3d 712 (Ala. 2009), has caused confusion as to whether an administrator ad litem may be appointed to prosecute a wrongful-death action. I do not believe that Affinity Hospital causes any such confusion. That case addressed a narrow question: Did a "duly appointed" administer ad litem have the capacity under the wrongful-death act, § 6-5-410(a), Ala. Code 1975, to file a wrongful-death action?[7] I say "duly appointed" because the issue whether the

_____

[7]Although Affinity Hospital holds that an administrator ad litem had the power to file a wrongful-death action, that decision was not unprecedented, as the practice was noted in numerous prior decisions: "There are several reported cases in which it appears that an administrator ad litem, without challenge, has filed a wrongful-death action. See, e.g., Ex parte Sumter County, 953 So. 2d 1235 (Ala. 2006); Franks v. Norfolk S. Ry., 679 So. 2d 214 (Ala. 1996); Fitts v. Minnesota Mining & Mfg. Co., 581 So. 2d 819 (Ala. 1991); and Handley v. Richards, 518 So. 2d 682, 683 (Ala. 1987) (Maddox, J.,

46

administrator ad litem had initially been properly appointed by the probate court <u>was not a matter before the Court</u> in <u>Affinity Hospital</u>:

> "Trinity[8] also contends that an administrator ad litem can be appointed only in connection with an <u>existing</u> proceeding. Whether a proceeding must be pending or existing before an administrator ad litem can be appointed does not touch upon the issue presented in this case: Whether an administrator ad litem has the power, capacity, or authority to file a wrongful-death action under § 6-5-410. Instead, Trinity's argument challenges whether Williford was properly appointed in the first place.
>
> "However, for purposes of the question, certified on this permissive appeal, the circuit court <u>assumed</u> that Williford was properly appointed as an administrator ad litem. Specifically, the circuit court's order certifying the question was based on the premise that Williford 'was duly appointed under Ala. Code [1975,] § 42-2-250 by the Jefferson County Probate Court as Administrator Ad Litem,' and the question it certified asks if 'the administrator ad litem' had 'the capacity to file this wrongful death suit ....' Trinity's issue is thus outside the scope of the questions certified in this case."

---

concurring specially)." <u>Affinity Hosp.</u>, 21 So. 3d at 716. See also <u>Golden Gate Nat'l Senior Care, LLC v. Roser</u>, 94 So. 3d 365, 366 (Ala. 2012) (Bolin, J., concurring specially) ("The case that arguably created the practice of appointing an administrator ad litem to file a wrongful-death action is <u>Franks v. Norfolk Southern Railway</u>, 679 So. 2d 214 (1996).").

[8]"Trinity" was a collective reference for Affinity Hospital, L.L.C., d/b/a Trinity Medical Center, and David Brittin, R.N.

47

Affinity Hosp., 21 So.3d at 718 n.4. Affinity Hospital cannot be read to speak to whether an administrator ad litem can be properly appointed under § 43-2-250, Ala. Code 1975, to pursue a wrongful-death action in the first place; whether the appointment in that case met the criteria of § 43-2-250, including issues as to whether an "existing" proceeding was required and whether the estate needed representation, was not addressed.

That an administrator ad litem, properly appointed, may file a wrongful-death action in no way confuses the issue whether a probate court may oversee the actions of the "personal representative" in a wrongful-death action. The probate court's attempts in the instant case to oversee the distribution of the proceeds of the wrongful-death action could have occurred even if Bessie Kirksey had been an administrator or executor. Any purported mistakes or fraud in the distribution of the proceeds could just have easily been committed by an administrator or executor. Nothing in the actual holding of Affinity Hospital contributed to the conduct in the instant case.

48

1130385, 1130403

MOORE, Chief Justice (concurring in the result in case no. 1130385 and dissenting in case no. 1130403).

I concur with the conclusion of the main opinion that the probate court lacked subject-matter jurisdiction to oversee the wrongful-death settlement and the distribution of the settlement proceeds. However, I concur in the result in case no. 1130385 and dissent in case no. 1130403 because, pursuant to § 12-22-20, Ala. Code 1975, I believe both cases are properly before us on appeal from a "final decree of the probate court, or from any final judgment, order or decree of the probate judge." In my opinion, the Court, while correctly identifying the jurisdictional defect in the probate proceedings, unnecessarily treats the omitted heirs' cross-appeal as a petition for the extraordinary writ of mandamus.

The main opinion addresses as a threshold issue whether the probate court's Rule 54(b), Ala. R. Civ. P., certification of its November 25, 2013, order was proper. Having determined that the order was not properly certified as a final order, the main opinion goes on to treat the omitted heirs' cross-appeal as a petition for a writ of mandamus. However, both Bessie Kirksey and the omitted heirs expressly invoked this

49

Court's jurisdiction to hear their appeals as of right pursuant to § 12-22-20, Ala. Code 1975, <u>not</u> from a judgment made final pursuant to Rule 54(b).

Section 12-22-20 is an independent source of appellate jurisdiction that does not depend upon a trial court's certifying the challenged order as final under Rule 54(b). Although an appeal from a Rule 54(b) order lies only if the order "dispose[d] of at least one of a number of claims or one of multiple parties," <u>Ex parte Noland Hosp. Montgomery, LLC</u>, 127 So. 3d 1160, 1165-66 (Ala. 2012), under § 12-22-20,

> "[a]n appeal lies to the circuit court or Supreme Court from any <u>final decree</u> of the probate court, or from any <u>final judgment, order or decree</u> of the probate judge; and, in all cases where it may of right be done, the appellate court shall render such decree, order or judgment as the probate court ought to have rendered."

(Emphasis added.) The main opinion attaches significance to the probate court's Rule 54(b) certification of its November 25, 2013, order, when in fact, I believe the parties properly invoked this Court's appellate jurisdiction under § 12-22-20, Ala. Code 1975. Pursuant to that provision, I believe this Court has jurisdiction to hear the parties' appeals, even if

50

the probate court had not certified its order as a final judgment.

In their September 25, 2013, motion, the omitted heirs challenged the probate court's subject-matter jurisdiction and asked the probate court to vacate its August 26, 2013, order insofar as it reopened Willie May Graves's estate and appointed the county administrator to preside over subsequent proceedings. The procedural posture of this case closely resembles that in Watts v. Town of Green Valley, 282 Ala. 555, 213 So. 2d 398 (1968). In Watts, a probate court exercised its special statutory jurisdiction to order that an election be held among residents of a town to determine whether to incorporate the town. Watts then moved the probate court to set aside its order on the ground that the court lacked subject-matter jurisdiction to issue the order. The alleged jurisdictional defect resulted from the fact that one of four individuals who had signed the petition to incorporate the town was not a qualified elector, as required by statute. The probate court determined that it had jurisdiction, and Watts appealed to this Court.

51

This Court reversed the order of the probate court on the ground that the disqualification of the signatory deprived the probate court of jurisdiction over the proceeding. Our reasoning and holding bears reiterating because I believe it applies with equal force to the instant case:

> "Here, there was a [d]irect attack on the validity of the decrees, which direct attack questioned the jurisdiction of the court to render such decrees, and moved the court that they be vacated. Such direct attack was filed in the court that rendered the decrees. The alleged facts recited in the decree, or decrees, as to the jurisdiction of the court, was contradicted by primary records in the proceeding, and disclosed the lack of jurisdiction on the part of the court ....
>
> "....
>
> "The question of jurisdiction is always fundamental and is a question of primary importance in every case, and if there is an absence of jurisdiction over subject matter, it is fatal. ...
>
> "....
>
> "...[A]n absence of jurisdiction was shown because one of the necessary condition precedents establishing such jurisdiction was proven to be not existing. ...
>
> "Here, if the subject matter before the probate court was an ordinary power vesting in the court without being dependent upon a special statute ... the rule relative to jurisdictional matters before the court may have been different. ...

52

"However, the power vested in the probate court ... was not an ordinary or general power vested in the court, but was a special limited or statutory power being exercised by a court of limited jurisdiction. ...

"Here, the judicial act of the probate court in deciding it had jurisdiction was an erroneous conclusion in view of the facts before the court on direct attack of the court's decrees. Viewing the record of the probate court proceedings, it is clear from such record now before this court by transcript and bill of exceptions, that the court was without authority to enter its decrees from which rulings of that court this appeal was taken.

"When the evidence clearly established lack of jurisdiction over the subject matter, the proceedings should have ended for they were void. ...

"No issue has been raised as to the propriety of the motions to vacate the probate court's decrees from a procedural standpoint. However, we think such motions were proper procedure, and the court had the power to vacate its decrees on motion. An appeal is the proper remedy where the trial court fails to vacate a void decree. Doby v. Carroll, 274 Ala. 273, 147 So. 2d 803 [(1962)]; McDonald v. Lyle, 270 Ala. 715, 121 So. 2d 885 [(1960)].

"It therefore follows that the probate court should have granted the motions seeking to vacate its decrees, such decrees being void for lack of jurisdiction on the part of the court."

282 Ala. at 559-62, 213 So. 2d at 402-04 (all but first emphasis added).

Additionally, in McDonald v. Lyle, 274 Ala. 273, 121 So. 2d 885 (1960), we declared that when a trial court issues a

53

judgment that is void for lack of subject-matter jurisdiction and fails to vacate that void judgment on motion of an interested party, the appropriate remedy is an appeal. Thus, under § 12-22-20, Ala. Code 1975, "an appeal is the proper remedy where the probate court fails to vacate an allegedly void judgment. Therefore, an appeal, <u>not a petition for a writ of mandamus</u>, provides [the petitioners] the proper mode for attacking the probate court's judgment. Mandamus is an extraordinary writ, and [the petitioners] cannot use it as a substitute for an appeal." <u>Ex parte Town of Valley Grande</u>, 885 So. 2d 768, 771 (Ala. 2003)(emphasis added).

Because the probate court's November 25, 2013, order, like the orders in <u>Watts</u> and <u>Town of Valley Grande</u>, failed to vacate its allegedly void order of August 26, 2013, I believe that order was directly appealable under § 12-22-20, Ala. Code 1975. The probate court lacked subject-matter jurisdiction to oversee the settlement of the wrongful-death action and the distribution of the wrongful-death-settlement proceeds. Therefore, "every order and judgment entered in this case [with respect to that issue] was void, including the judgments from which this appeal was taken. A void judgment will not

54

support an appeal." <u>Bernals, Inc. v. Kessler-Greystone, LLC</u>, 70 So. 3d 315, 321 (Ala. 2011)(vacating a default judgment and dismissing an appeal from that and other orders, on the ground that the trial court lacked jurisdiction to hear the case). Section 12-22-20 instructs us, when hearing an appeal, to "render such ... order or judgment as the probate court ought to have rendered." Therefore, I believe we should dismiss both Bessie Kirksey's appeal and the omitted heirs' cross-appeal, vacate the probate court's orders of August 26, 2013, and November 25, 2013, direct the probate court to dismiss the interpleader action, and hold that the language of the probate court's May 4, 2012, order approving the wrongful-death settlement and ordering the distribution of the proceeds is of no effect.