MAIN, Justice.
Noland Hospital Montgomery, LLC (“NHM”), a defendant in a wrongful-death action alleging medical negligence, petitions this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order denying NHM’s motion for a summary judgment and to enter a summary judgment in NHM’s favor. NHM contends that it is entitled to a summary judgment on the basis that the applicable statute of limitations for this wrongful-death action, § 6-5-410, Ala. Code 1975,[1] bars the claims asserted against it by Wheatton K. Pynes (“Pynes”), individually and as administrator of the estate of Houston Earl Pynes, deceased. The disposition of this petition requires an interpretation of the interplay between Rule 9(h), Ala. R. Civ. P., relating *1163 to fictitiously named parties, and Rule 15(c), pertaining to the relation back of amendments to pleadings. We grant the petition and issue the writ.
I. Factual Background and Procedural History
This wrongful-death action alleges medical negligence relating to the long-term care of Pynes’s brother, Houston Earl Pynes (“Houston”). Houston died on March 9, 2007, while hospitalized at NHM, after he had been at several different hospitals, nursing homes, and rehabilitation facilities for an extended period.
On March 6, 2009, Pynes filed a wrongful-death action in Montgomery Circuit Court against “Jackson Hospital, Dr. Muk-esh Patel, and ‘Factitious [sic] party ‘A’, ‘B’ being that person and or agent for NOLAND COMPANY, whose true name and legal descriptions [are] otherwise unknown to Plaintiff but will be supplied by amendment when ascertained” (hereinafter collectively referred to as “the defendants”), alleging that the defendants caused Houston’s death by negligently injuring him while he was a patient of the defendants and by then negligently treating his injuries while he remained a patient of the defendants. The original two-count complaint alleges that “the Defendants failed to provide [Houston] with the professional medical services, care and treatment that a physician within the medical community possessing and exercising ordinary and reasonable medical knowledge and skills would have provided.... ”
On May 8, 2009, Pynes filed an amended complaint. The first amended complaint made no changes to the style of the complaint or to the description of the parties being sued. Subsequent to the filing of the first amended complaint, Pynes’s counsel withdrew, the trial court stayed the proceedings, and Pynes obtained new counsel.
On January 6, 2010, Pynes, through new counsel, filed a second amended complaint. The second amended complaint reasserted the allegations of the first two complaints, but substituted NHM for a fictitiously named defendant, as follows:
“(2) Plaintiff substitutes Noland Hospital Montgomery, LLC, previously named and d/b/a Long Term Care Hospital at Jackson, LLC, and its agents and/or employees for a fictitious party and further alleges all allegations listed in the original Complaint against this additionally named defendant.”
On March 5, 2010, NHM moved to dismiss Pynes’s second amended complaint, arguing that Pynes’s claims against it were barred by the statute of limitations because, it asserted, the second amended complaint had been filed more than two years after the act or omission giving rise to the claim. NHM, citing Rule 12(b)(6), Ala. R. Civ. P., also argued that Pynes failed to state a claim against it that would entitle him to relief. While NHM’s motion to dismiss remained pending, Pynes’s counsel withdrew, and a new attorney, Pynes’s third attorney, filed an appearance, and the trial court again stayed the proceedings.
On October 28, 2010, Pynes’s third attorney filed a third amended complaint, asserting new claims against NHM not raised in the previous three complaints. On November 19, 2010, the trial court heard NHM’s motion to dismiss, among other motions. NHM argued that Pynes was aware of NHM’s existence and of its role when Pynes filed his original complaint; thus, it argued, the second amended complaint substituting NHM for a fictitiously named defendant did not relate back to original complaint. On December 1, 2010, the trial court denied NHM’s motion to dismiss without an explanation and *1164 certified the order denying the motion to dismiss as final pursuant to Rule 54(b), Ala. R. Civ. P.
After the trial court denied NHM’s motion to dismiss, NHM filed an answer to Pynes’s third amended complaint, asserting, among other things, that Pynes’s claims against it were barred by the statute of limitations and by Rule 15(c) and Rule 9(h), Ala. R. Civ. P. NHM then conducted discovery as to the issue of Pynes’s knowledge of NHM’s existence and its role in Houston’s hospitalization prior to the filing of his original complaint. NHM’s discovery showed that during Houston’s hospitalization at NHM, Pynes signed forms consenting to procedures for his brother; those consent forms contained the heading “Long Term Hospital of Montgomery.” In Pynes’s deposition, he testified that when Houston was a patient at Jackson Hospital and then at NHM, he knew of “Noland” and understood the name Noland was associated with the long-term-care hospital that was at Jackson. Additionally, Pynes also testified that, when he met with administrative personnel at both Jackson and NHM to discuss various issues related to his brother’s care, he understood that the personnel at Jackson and the personnel at NHM were different.
The discovery also indicated that, following Houston’s death while a patient at NHM, Pynes signed an authorization for the release of Houston’s body, allowing the “Long Term Care Hospital at Jackson” to release Houston’s body to the funeral home. In addition, on August 29, 2008, when Houston’s death certificate was filed by Pynes in the Probate Court of Houston County, along with his petition for letters of administration, it listed the place of Houston’s death as the “Long Term Care Hospital at Jackson.”
On September 22, 2008, Pynes’s first attorney sent a letter to the “Long Term Care Hospital at Jackson,” requesting a copy of its records on Houston. Pynes signed an authorization for release of information directed to the “Long Term Care Hospital at Jackson.” In response to this request for medical records, the medical-records coordinator for NHM sent an invoice on November 3, 2008, to Pynes’s attorney for the copying costs associated with supplying these records. The heading of the invoice reads “Long Term Hospital of Montgomery,” and the invoice instructed that payment be made to the “Long Term Hospital of Montgomery.” The medical-records coordinator prepared a certification of records, dated November 5, 2008, in which she authenticated the records she sent to Pynes’s attorney as being those of the “Long Term Hospital of Montgomery.” On November 6, 2008, Pynes’s attorney issued a check made payable to “Long Term Hospital of Montgomery” for the invoiced amount. Additionally, Houston’s medical records from NHM contain references to the “Long Term Care Hospital of Montgomery,” as well as to the “Long Term Care Hospital,” “Long Term Care Hospital at Jackson,” and “Lloyd Noland Long Term Care Hospital at Jackson.”[2]
After conducting discovery, NHM filed a motion for a summary judgment in which it contended, among other things, that Pynes had sufficient information before filing his wrongful-death action to have ascertained the existence of and the proper name of NHM. On November 8, 2011, the trial court denied NHM’s summary-judg- *1165 merit motion. NHM filed its petition with this Court on November 22, 2011.
II. Standard of Review
“ ‘A writ of mandamus is an extraordinary remedy, and it “will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” ’ ”
Ex parte Monsanto Co., 862 So.2d 595, 604 (Ala.2003) (quoting Ex parte Butts, 775 So.2d 173, 176 (Ala.2000), quoting in turn Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (Ala.1993)).
“The general rule is that ‘ “a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment.” ’ Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998) (quoting Ex parte Central Bank of the South, 675 So.2d 403 (Ala.1996))....
“... In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion in which a defendant argued that the plaintiffs claim was barred by the applicable statute of limitations. See Ex parte Snow, 764 So.2d 531 (Ala.1999) (issuing the writ and directing the trial court to enter a summary judgment in favor of the defendant); Ex parte Stover, 663 So.2d 948 (Ala.1995) (reviewing the merits of the trial court’s order denying the defendant’s motion for a summary judgment, but denying the defendant’s petition for a writ of mandamus); Ex parte FMC Corp., 599 So.2d 592 (Ala.1992) (same); Ex parte Klemawesch, 549 So.2d 62, 65 (Ala.1989) (issuing the writ and directing the trial court ‘to set aside its order denying [the defendant’s] motion to quash service or, in the alternative, to dismiss, and to enter an order granting the motion’). In Snow, Stover, FMC Corp., and Klemawesch, the plaintiff amended his or her complaint, purporting to substitute the true name of a fictitiously named defendant. In each case, the plaintiffs claim against the newly named defendant would have been barred by the applicable statute of limitations if the plaintiffs amendment did not, pursuant to Rule 15(c), Ala. R. Civ. P., relate back to the filing of the plaintiffs original complaint.”
Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000).
III. Analysis
A. Motion to Dismiss and Rule 5k(b) Certification
We first address Pynes’s argument that NHM’s petition for a writ of mandamus is untimely because NHM did not appeal the trial court’s order of December 1, 2010, denying NHM’s motion to dismiss, which the trial court certified as a final judgment pursuant to Rule 54(b), Ala. R. Civ. P. Rule 21(a)(3), Ala. RApp. P., provides that a petition for a writ of mandamus “shall be filed within a reasonable time” and further explains that “[t]he presumptively reasonable time for filing a petition seeking review of an order of a trial court or of a lower appellate court shall be the same as the time for taking an appeal,” which is 42 days. As we understand Pynes’s argument, he contends that because NHM did not file its petition for a writ of mandamus within the 42-day period following the entry of the December 1, 2010, order, the petition was untimely. We disagree.
For an order to be susceptible to Rule 54(b) certification, the order must *1166 dispose of at least one of a number of claims or one of multiple parties, must' make an express determination that there is no just reason for delay, and must expressly direct the entry of a judgment as to that claim or that party. Jakeman v. Lawrence Group Mgmt. Co., 82 So.3d 655, 659 (Ala.2011) (citing Committee Comments on 1973 Adoption of Rule 54(b), Ala. R. Civ. P.). Because a denial of a motion to dismiss does not dispose of a claim, the purported Rule 54(b) certification of finality was ineffective here.
“Pursuant to Rule 54(b), a trial court may direct ‘the entry of a final judgment as to one or more but fewer than all of the claims or parties.’ But Rule 54(b) makes an order final — and therefore ap-pealable — ‘only where the trial court “has completely disposed of one of a number of claims, or one of multiple parties.’” Tanner v. Alabama Power Co., 617 So.2d 656, 656 (Ala.1993) (quoting Committee Comments on the 1973 adoption of Rule 54(b)) (emphasis added in Tanner). In other words, for a Rule 54(b) certification of finality to be effective, it must fully adjudicate at least one claim or fully dispose of the claims as they relate to at least one party.”
Haynes v. Alfa Fin. Corp., 730 So.2d 178, 181 (Ala.1999). “An appeal will not lie from a nonfinal judgment.” Baugus v. City of Florence, 968 So.2d 529, 531 (Ala. 2007). Therefore, the fact that NHM did not appeal from the nonfinal order denying NHM’s motion to dismiss had no effect on its later motion for a summary judgment or its petition for a writ of mandamus filed after the denial of that summary-judgment motion.[3]
The trial court’s order denying NHM’s summary-judgment motion was entered on November 8, 2011. NHM filed its petition for a writ of mandamus on November 22, 2011, well within the 42-day presumptively reasonable time. The petition thus was timely filed.
B. Motion for a Summary Judgment
We next address whether Pynes’s second amended complaint, filed on January 6, 2010, after the expiration of the two-year limitations period for bringing a wrongful-death action, see § 6-5-410, AIa.Code 1975, substituting NHM for the fictitiously named party in the original complaint, related back to the filing of his original complaint on March 6, 2009. Rules 9(h) and 15(c)(4), Ala. R. Civ. P., “ ‘ “allow a plaintiff to avoid the bar of a statute of limitations by fictitiously naming defendants for which actual parties can later be substituted.” ’ ” Ex parte Tate & Lyle Sucralose, Inc., 81 So.3d 1217, 1220 (Ala.2011) (quoting Ex parte Chemical Lime of Alabama, Inc., 916 So.2d 594, 597 (Ala.2005), quoting in turn Fulmer v. Clark Equip. Co., 654 So.2d 45, 46 (Ala.1995)). Fictitious-party practice is governed by Rule 9(h), which provides:
“When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when that party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.”
Under Rule 15(c)(4), an amendment of a pleading relates back “to the date of the original pleading when ... relation back is *1167 permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).”
In order to avoid the bar of a statute of limitations when a plaintiff amends a complaint to identify a fictitiously named defendant on the original complaint, the plaintiff: (1) must have adequately described the fictitiously named defendant in the original complaint; (2) must have stated a cause of action against the fictitiously named defendant in the body of the original complaint; (3) must have been ignorant of the true identity of the fictitiously named defendant; and (4) must have used due diligence in attempting to discover the true identity of the fictitiously named defendant. Ex parte Tate & Lyle Sucralose, 81 So.3d at 1220-21. In addition,
“ ‘[a] plaintiff is ignorant of the identity of a fictitiously named defendant when, after exercising due diligence to ascertain the identity of the party intended to be sued, he lacks knowledge at the time of the filing of the complaint of facts indicating to him that the substituted party was the party intended to be sued. Likewise, to invoke the relation-back principle of Rule 15(c), a plaintiff, after filing suit, must proceed in a reasonably diligent manner to determine the true identity of a fictitiously named defendant and to amend his complaint accordingly.’
“Ex parte FMC Corp., 599 So.2d 592, 593-94 (Ala.1992). The test for determining whether a party exercised due diligence in attempting to ascertain the identity of the fictitiously named defendant is ‘whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously.’ Davis v. Mims, 510 So.2d 227, 229 (Ala. 1987).
“As evidence of due diligence, this Court looks to, among other things, whether the plaintiff has conducted formal or informal discovery. ‘Although it is true that formal discovery is not the only method of determining the identity of a fictitiously named defendant, it commonly is vital to demonstrating due diligence because it provides objective evidence of the plaintiffs case activity.’ Ex parte Hensel Phelps Constr. Co., 7 So.3d 999, 1004 (Ala.2008). The conducting of formal discovery does not necessarily prove due diligence, however. See, e.g., Jones v. Resorcon, Inc., 604 So.2d 370, 373 (Ala.1992) (finding a lack of due diligence where the plaintiff failed to seek a court order permitting inspection of a fan after the defendant refused to allow the plaintiffs requested access to the fan; inspection of the fan that allegedly caused the plaintiffs injury would have revealed the name of the fan’s manufacturer).
“This Court has found a lack of due diligence even when a plaintiff has conducted both formal and informal discovery. See, e.g., Ex parte Mobile Infirmary Ass’n, 74 So.3d 424 (Ala.2011) (finding a lack of due diligence where the plaintiff had inquired informally of defense counsel as to who should be the proper defendants, had searched the Alabama Secretary of State’s Web site, and had propounded interrogatories directed at determining the proper identities of the defendants, but waited until after the limitations period had expired to amend the complaint). See also Crowl v. Kayo Oil Co., 848 So.2d 930 (Ala.2002) (finding a lack of due diligence where the plaintiff was relying on interrogatories to determine the identities of the defendants, and the defendants never answered the interrogatories).”
*1168 Ex parte Tate & Lyle Sucralose, 81 So.3d at 1221. “In a case involving fictitiously named defendants, the answer to [the] question [whether an amendment relates back to the filing of the original complaint as permitted by Rules 9(h) and 15(c), Ala. R. Civ. P.,] depends upon the plaintiffs conduct.” Ex parte Mobile Infirmary Ass’n, 74 So.3d 424, 428 (Ala.2011).
NHM disputes that Pynes stated a cause of action against it, that he adequately described NHM’s role as it related to Houston’s death, and that Pynes was ignorant of the identity of NHM when NHM was identified only as a fictitiously named defendant in the original complaint. Houston died on March 9, 2007; Pynes had two years from that date in which to file a wrongful-death action. See § 6-5-410, Ala.Code 1975 (“A personal representative may commence an action ... for the wrongful act, omission, or negligence of any person, persons, or corporation ... whereby the death of his testator or intestate was caused.... Such action must be commenced within two years from and after the death of the testator or intestate.”).[4] Pynes filed his original complaint on March 6, 2009, just a few days before the two-year limitations period expired. Pynes substituted NHM for the fictitiously named defendant on January 6, 2010, in his second amended complaint. The determinative issue is whether that amendment relates back to the filing of the original complaint as permitted by Rule 15(c), Ala. R. Civ. P. Because Pynes failed to adequately describe in the original complaint the fictitiously named defendant for which he substituted NHM; failed to state a claim against that fictitiously named defendant in the body of the original complaint; failed to demonstrate that he was ignorant of the true identity of that fictitiously named defendant; and failed to exercise due diligence to ascertain the true identity of that fictitiously named defendant, the second amended complaint does not relate back to Pynes’s original complaint.
Neither the original complaint nor the first amended complaint stated a cause of action against a long-term-care facility or adequately described a long-term-care facility’s role as it related to Houston’s death. Moreover, even though Pynes was on notice that the area within Jackson Hospital in which long-term care was provided was identified by several different names, Pynes did not attempt to discover NHM’s true identity in a timely fashion. In his brief in response to NHM’s petition, Pynes stated that when he filed his original complaint, he was not sure whether NHM was an entity separate from Jackson Hospital because, he says, Houston “remained at the same physical location within, Jackson Hospital, throughout the pertinent timeframe.... ” Pynes’s brief, at 12. However, in another section of his brief Pynes states that Houston “was transferred to another wing within Defendant Jackson Hospital’s facility on November 28, 2006.” Pynes’s brief, at 15. Pynes also acknowledges that four different names for NHM are used in Houston’s medical records that were provided to his lawyers. Despite Houston’s transfer during his hospitalization and the different names of the entities in Houston’s medical records, Pynes conducted no discovery whatsoever to determine the correct entity that should have been sued. Such discovery — or lack thereof — is considered vital evidence by this Court in demonstrating due diligence. Tate & Lyle Sucralose, 81 So.3d at 1221. There simply is no evidence in the materials before us that *1169 Pynes exercised due diligence in learning the true identity of NHM.
Pynes’s failure to demonstrate that he is entitled to the relief afforded by Rules 9(h) and 15(c)(4) and his lack of due diligence prevent the second amended complaint from relating back to his original complaint. The two-year statute of limitations for a wrongful-death claim therefore was not tolled, and Pynes’s wrongful-death claim against NHM is time-barred.
In his brief, Pynes argues that this case involves relation-back analysis pursuant to Rule 15(c)(3), Ala. R. Civ. P. Rule 15(c)(3) provides, in pertinent part:
“(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
[[Image here]]
“(3) the amendment, other than one naming a party under the party’s true name after having been initially sued under a fictitious name, changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied[5] and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party....”
In this case, Pynes, in the original complaint, named “Jackson Hospital, Dr. Muk-esh Patel, and ‘Factitious [sic] party ‘A’, ‘B’ being that person and or agent for NOLAND COMPANY, whose true name and legal descriptions [are] otherwise unknown to Plaintiff but will be supplied by amendment when ascertained.” An amendment merely substituting a named party for a fictitiously named party relates back only if the provisions of Rule 9(h) are satisfied, i.e., if the plaintiff “is ignorant of the name of an opposing party and so alleges” in the original complaint.
IV. Conclusion
Based on the foregoing, we conclude that NHM has established a clear legal right to the relief sought. Accordingly, we grant the petition and issue the writ directing the Montgomery Circuit Court to enter a summary judgment in favor of NHM in Pynes’s wrongful-death action against it.
PETITION GRANTED; WRIT ISSUED.
MALONE, C.J., and WOODALL and BOLIN, JJ., concur.
MURDOCK, J., concurs in the result.

. See Johnson v. Brookwood Med. Ctr., 946 So.2d 849, 853 (Ala.2006) ("It is well established that the two-year limitations period found in § 6-5-410, Ala.Code 1975, for as-setting wrongful-death actions (and not § 6-5-482, Ala.Code 1975, the medical-malpractice limitations period) applies to wrongful-death cases alleging medical malpractice.”).

. NHM also filed with its motion for a summary judgment the affidavits of Nurse Anita Deason and Dr. Mukesh Patel regarding standards of care applicable to the treatment of Houston.

. Rule 5, Ala. R.App. P., provides a process by which a party can seek permission to file an appeal challenging an interlocutory order in civil cases under limited circumstances, but NHM did not seek such a permissive appeal in this case. Because that question was not presented to us, we express no opinion on whether we would have granted such a request.

. Section 6-5-410 was' amended effective June 9, 2011; the amendment applies only to actions filed after June 9, 2011. See § 6-5-410(f).

. Provision (2) states that the pleading relates back when "the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading-"