PARKER, Justice,
VEL, LLC (“VEL”); Montgomery Drug Co., Inc. (“MDCI”); Robert Stafford; and Erica Greene (hereinafter collectively referred to as “the petitioners”) petition this Court for a writ of mandamus directing the Montgomery Circuit Court to vacate its order of January 12, 2016, denying the petitioners’ respective motions for a summary judgment and to enter an order granting the petitioners’ respective motions for a summary judgment.
Facts and Procedural History
On June 16, 2011, William Henry Kil-gore sought to fill his prescription for ropi-nirole, a drug used to treat the symptoms of Parkinson’s disease, at the Adams Drugs pharmacy located at 35 Mitchell Drive, Montgomery, Alabama (“the Adams Drugs pharmacy”). Instead .of filling Kil-gore’s prescription with ropinirole as prescribed, the employees working at the Adams Drugs pharmacy filled Kilgore’s prescription with risperidone. On June 20, 2011, after having taken risperidone instead of ropinirole for several days, Kil-gore began experiencing negátive health consequences and sought medical assistance at the emergency room of Baptist Medical Center South (“Baptist South”) in Montgomery. Medical personnel at Baptist South - discovered that Kilgore had been taking risperidone instead of the prescribed ropinirole. It was alleged that Kil-gore suffered injuries and damages as a result of ingesting risperidone rather than ropinirole for more than four days.
At the time Kilgore’s prescription was improperly filled at the Adams Drugs *594 pharmacy, VEL and MDCI each owned and operated at least one Adams Drugs pharmacy in Montgomery. It is undisputed that the Adams Drugs pharmacy is owned and operated by MDCI. The affidavit testimony of Terrell Lankford, a member of and the registered agent for VEL, indicates that, “[s]ince its formation in 1997, V[EL] ... has not been known as or used the name ‘Montgomery Drug Company, Inc.,’ or any variation thereof.” The affidavit testimony of Michael Vinson, a shareholder and registered agent of MDCI, indicates that, “[s]ince its formation in 1960, [MDCI] has not been known as or used the name ‘V[EL], LLC,’ or any variation thereof.” VEL and MDCI do have common ownership.
On May 30, 2012, one of Kilgore’s trial counsel, J.B. Perrine, sent a letter to Lankford “c/o VEL, LLC d/b/a Adams Drugs” in order to “discern whether [VEL] has any interest in a pre-litigation resolution of Mr. Kilgore’s claims.” In that letter, Perrine asserted that VEL “negligently refilled Mr. Kilgore’s prescription for ropinirole with risperidone.” Perrine was under the mistaken impression that VEL, instead of MDCI, owned and operated the Adams Drugs pharmacy; there is no evidence indicating why Perrine failed to determine that MDCI, rather than VEL, owned and operated the Adams Drugs pharmacy. Nor is there any evidence indicating what steps, if any, Perrine took to ascertain the identity of the owner of the Adams Drugs pharmacy before sending the May 30, 2012, letter. Perrine requested that, if Lankford was interested in reaching a settlement, Lankford “forward this letter to your insurance carrier and have your insurance carrier contact us.” Apparently, Lankford forwarded the May 30, 2012, letter to VEL’s insurer.
VEL and MDCI have the same insurer, Penn National Insurance Company (“Penn National”). On June 6, 2012, Shari Campbell, an employee in Penn National’s claims department, sent Perrine an e-mail informing him that Penn National was the insurer “for [the] Adams Drug store for the date Mr. Kilgore filled his prescription there” and that Kilgore’s medical records were needed in order to further investigate Kilgore’s claim that he had suffered damages as a result of his injuries. Campbell’s June 6, 2012, e-mail to Perrine made no reference to either VEL or MDCI. Kilgore provided Penn National with the requested medical records.
On October 24, 2012, Campbell sent another e-mail to Perrine. The subject line of Campbell’s e-mail stated: “Montgomery Drug Inc & Adams Dr.”
On October 26, 2012, Campbell, on behalf of Penn National, sent a letter to Perrine offering to settle Kilgore’s claim for $12,500. The letter that Campbell sent Perrine unequivocally identified MDCI as the insured on whose behalf Penn National was making the settlement offer. In all capital letters at the top of the letter, Campbell identified “MONTGOMERY DRUG INC” as the “[i]nsured.” Kilgore rejected Penn National’s settlement offer.
On February 27, 2013, Kilgore and Patricia Kilgore Kyser, as guardian and conservator of Kilgore (hereinafter collectively referred to as “the plaintiffs”), filed the original complaint in the action against “VEL, LLC, d.b.a. Adams Drugs, and/or Adams Drugs Good Neighbor Pharmacy,” and several fictitiously named defendants, seeking damages for Kilgore’s injuries that the plaintiffs alleged were caused by the defendants’ alleged negligence and wantonness.[1] The complaint defined VEL as *595 an entity that owned and operated nine pharmacy locations, including the Adams Drugs pharmacy.
On the same day, one of the plaintiffs’ trial counsel, David Selby, who was a member of the same law firm as Perrine, sent Campbell a letter informing her that the plaintiffs had filed a complaint against “Penn National’s insured.” The subject line of the letter stated: “Re: Montgomery Drug Inc., Adams Drug Company.” There is no mention of VEL in the letter.
On March 5, 2013, Reba McLain, an attorney hired by Penn National to represent its insured, MDCI, e-mailed Selby to “confirm the agreement we reached today giving us an open extension to respond to the lawsuit filed against our insured Montgomery Drug Inc.” The subject line of the e-mail stated: “Kilgore v Montgomery Drug Inc.”
It is undisputed that the two-year statute of limitations on the plaintiffs’ claims against MDCI expired in June 2013. See § 6—2—38(1), Ala. Code 1975; see also Dorsey v. Bowers, 709 So.2d 51, 56 (Ala. Civ. App. 1998)(holding that § 6-2-38(1) applies to claims of negligence and wantonness).
On July 18, 2013, VEL filed a motion to dismiss, asserting that it “has no relation or connection with any of the claims stated against it in [the plaintiffs’] complaint.” VEL stated that it was “the wrong entity against which to assert these claims.”
On July 19, 2013, after receiving VEL’s motion to dismiss, Selby sent an e-mail to VEL’s trial counsel, stating:
“This follows receipt of V[EL]’s LLC d/b/a Adams Drugs Motion to Dismiss and our phone conversation yesterday regarding the Motion. Pursuant to our conversation it is my understanding that VEL LLC actually does not own and/or operate the Adams Drugs at 35 Mitchell Drive where our client’s prescription was filled, but that ‘Montgomery Drug Company, Inc.’ owns and operates the Adams Drugs located [at] 35 Mitchell Drive. Further, it is my understanding that Penn National has retained your firm on this matter and that Penn National is-the insurance carrier for both entities, V[EL] LLC and Montgomery Drug Company, Inc. With that in mind, I would ask if you would please accept service on behalf of Montgomery Drug Company, Inc. and confirm that Montgomery Drug Company, Inc. is the correct entity. Thank you.”
VEL’s trial counsel responded: ‘Tour email below is correct to the best of my knowledge at this time. I have been authorized by [MDCI] to accept service on their behalf.”
On August, 13, 2013, the plaintiffs filed their first amended complaint, substituting MDCI for fictitiously named defendant “DD.”[2] The plaintiffs stated that “[MDCI] d.b.a. Adams Drugs and/or Adams Drugs Good Neighbor Pharmacy ... operates the ‘Adams Drugs’ location at 35 Mitchell Drive in Montgomery, Alabama.” The first amended complaint retained VEL as a defendant; MDCI was not substituted for VEL.
On September 16, 2013, MDCI filed a motion to dismiss the plaintiffs’ claims against it. MDCI argued that the applicable statute of limitations had expired in June 2013. MDCI further argued that the plaintiffs had not amended their complaint to add MDCI as a defendant until August 13, 2013, nearly two months after the applicable statute of limitations had expired. MDCI argued that the amended complaint did not relate back to the date of the *596 original complaint. In support of that argument, MDCI argued that the plaintiffs “had multiple documents and substantial information in their possession identifying [MDCI] as the proper defendant in this action before the statute of limitations expired” and, thus, that the complaint against MDCI was due to be dismissed.
= On September 16, 2013, VEL filed a motion to dismiss the ■ plaintiffs’ first amended complaint, arguing that it “is the wrong entity against which to assert these claims.” Both MDCI and VEL filed several subsequent motions to dismiss, in which they asserted the same basic arguments contained in their first motions to dismiss.
On November 12, 2013, the plaintiffs filed a response to MDCI’s motion to" dismiss. The plaintiffs argued that the circuit court “should deny [MDCI’s] motion to dismiss because all of [the plaintiffs’] claims in the first amended complaint relate back under Alabama Rule of Civil Procedure 15(c)(3), the misnomer rule, and Alabama fictitious party practice.” The plaintiffs argued that they had exercised due diligence in seeking to discover the identity of MDCI. In support of that argument, the plaintiffs presented the affidavit testimony of Matthew Ford, one of their trial counsel; Ford is an attorney at the same law firm as Perrine and Selby. Ford’s affidavit stated, in pertinent part:
“2. To ascertain the correct name of the legal entity which owned and/or’ operated the Adams Drugs pharmacy located at 35 Mitchell Drive, Montgomery, AL 36109, I conducted a search for Adams Drugs in the online business records database found on the Alabama Secretary of State website. The search yielded no results.
“3. I also searched the public website for Adams Drugs, www.adamsdrugs.net, and did not find any name of a legal entity for Adams Drugs, found neither the name of any parent or subsidiary company of Adams Drugs, nor any alternative names for the Adams Drugs. The public website for Adams Drugs listed nine locations for Adams Drug, including the Adams Drugs location at 35 Mitchell Drive, Montgomery, AL 36109, all doing business under the same name—Adams Drugs. The public website, did not reveal that any particular legal entity owned and/or operated any particular Adams Drugs pharmacy.
“4. I conducted an internet search for Adams Drugs and found various directory listings that included VIEL], LLC’ as an alternate name for Adams Drugs.
“5.1 searched for V[EL], LLC on the online business ■ record database of the Alabama Secretary of State. My search revealed that the listed ‘Nature of Business’ of V[EL], LLC is ‘To buy/sell & deal in drugs, pharmaceuticals & other merchandise.’ In addition, Mr. Mike Vinson was listed as a member of V[EL], LLC.”
There is no other evidence in the record indicating what measures, if any, the plaintiffs took to discover the identity of MDCI.
The plaintiffs also submitted the affidavit of Perrine. Perrine’s affidavit described his communications with Campbell in response to Perrine’s letter seeking pre-liti-gation resolution of Kilgore’s 'claims. Per-rine stated that Campbell had informed him that Penn National was the insurance carrier for VEL and that she was the adjuster handling Kilgore’s claims. Perrine stated that at no point in the course of their communications did Campbell inform him that VEL was not-the proper entity responsible for Kilgore’s injuries. Perrine asserted in his affidavit that
“having Ms. Campbell engage me in settlement discussions for months regarding Mr. Kilgore’s claims against Adams Drugs, when I had initially sent a letter to V[EL], LLC and later sent evidence *597 showing that Mr. Kilgore had" received the wrong prescription medication •from the Adams Drugs pharmacy located at 35 Mitchell Drive, Montgomery, AL 36109, convinced me that V[EL], LLC was the proper party responsible for Mr. Kilgore’s claims and the proper insured of Penn National.”
On December 5, 2013, the plaintiffs amended their complaint for the second time to substitute Stafford and Greene for fictitiously named defendants “G” and “M.” The plaintiffs alleged that Stafford was a licensed pharmacist who was employed or worked at the Adams Drugs pharmacy and who “had involvement with and/or responsibility for the prescription error, including but not limited to filling, dispensing and/or delivering the wrong medication to Mr. Kilgore.” The plaintiffs alleged that Greene was a pharmacy technician who was employed or worked at the Adams Drugs pharmacy and who “had involvement with and/or responsibility for the prescription error, including but not limited to filling, dispensing and/or delivering the wrong medication to Mr. Kilgore.” Id.
On May 29, 2014, the plaintiffs amended their complaint for the third time to add assertions that, despite exercising due diligence, they were ignorant of MDCI’s identity until VEL filed its motion to dismiss in July 2013. Additionally, the plaintiffs stated that they were ignorant of Stafford’s and Greene’s identities until November 2013. The plaintiffs also asserted that VEL and MDCI were agents and alter egos of each other.
On May 30, 2014, VEL filed a motion for a summary judgment. In its motion, VEL argued that it “had no connection to this lawsuit” and, thus, that it was entitled to a judgment in its favor.. Specifically, VEL argued that the plaintiffs “had documents and information in their possession .as early as June 2012 that identified [MDCI], rather than V[EL], as the legal entity operating the Adams Drug pharmacy.” VEL further argued that “there were public records readily-available to [the plaintiffs] identifying [MDCI] as the legal entity operating the Adams Drugs pharmacy.!’ In support of that argument, VEL attached to its motion the affidavit testimony of Charles Wilson, the revenue manager for the City of Montgomery. Wilson’s affidavit stated, in pertinent part:
“3. The City of Montgomery License and Revenue Division keeps a listing of all current and former holders of business licenses in the City of Montgomery, Alabama.
“4. If a citizen calls the'License and Revenue Division and provides the address of a business in Montgomery, our office is capable of providing them with the name of the entity which holds the business license for that address.
“5. From 2011 to the present date, a request for the name of the entity which .holds the business license for 35 Mitchell Drive, Montgomery, Alabama, would have revealed that a.business license was issued to ‘Montgomery Drug Company d/b/a Adams Drug East’ for that address.”
Also on May 30, 2014, MDCI filed a motion for a summary judgment. MDCI argued that the plaintiffs had failed to exercise-due diligence to discover the identity of the owner and operator of the Adams Drugs pharmacy. MDCI also argued that, even though the plaintiffs had failed to exercise due diligence, they were not ignorant of MDCI’s identity. Accordingly, MDCI argued that the plaintiffs’ second amended' complaint substituting MDCI for fictitiously named defendant “DD” and any subsequent amended complaints naming MDCI as a defendant do not relate back to the filing of the original complaint under Rule 15(c)(4), Ala. R. Civ. *598 P., and, thus, are barred by the applicable statute of limitations.
On May 30, 2014, Stafford and Greene also filed a motion for a summary judgment, arguing that the plaintiffs’ claims against them are barred by the applicable statute of limitations. Stafford and Greene alleged that the plaintiffs had failed to exercise due diligence in discovering Stafford’s and Greene’s identities. Stafford and Greene also argued that the plaintiffs had failed to promptly amend their complaint once they learned of Stafford’s and Greene’s identities. Accordingly, Stafford and Greene argued that the plaintiffs’ third amended complaint substituting Stafford and Greene for fictitiously named defendants and any subsequent amended complaints naming them as defendants do not relate back to the filing of the original complaint and, thus, are barred by the applicable statute of limitations.
On June 5, 2014, the plaintiffs filed a response to the petitioners’ outstanding motions to dismiss and motions for a summary judgment. Among other things, the plaintiffs argued that, pursuant to Rule 15(c)(3), Ala. R. Civ. P., their second amended complaint substituting MDCI for fictitiously named defendant “DD” should relate back to the filing of their original complaint. The plaintiffs also argued that, based on the doctrines of equitable tolling and equitable estoppel, their claims against MDCI should not be barred under the applicable statute of limitations.
On May 22, 2015, Kyser filed a fourth amended complaint informing the circuit court that Kilgore died on January 11, 2015, and naming Kyser, as the administrator ad litem of Kilgore’s estate, as the only plaintiff.
On January 12, 2016, following oral argument, the circuit court held, in part:
“Relation back under Rule 15[, Ala. R. Civ. P.,] is applicable to [Kyserj’s claims against MDCI because it is undisputed that MDCI knew that but for a mistake concerning its identity as the owner and operator of the Adams Drugs at 35 Mitchell Drive it would have been named as a defendant within the statute of limitations;
“[Kyser] was ignorant of MDCI’s identity as the owner and operator of the Adams Drugs at 35 Mitchell Drive- and [Kyser] exercised due diligence both before and after [she] filed [her] original Complaint to discover MDCI as the true identity of a fictitiously named party;
“MDCI and VEL have such identity of interests that relation back would not be prejudicial to MDCI;
“The statute of limitations was equitably tolled given the fact that MDCI (through Penn National and its attorney) permitted [Kyser] to continue in [her] mistaken belief that VEL was the responsible party when they knew MDCI was the owner and operator of the Adams Drugs at 35 Mitchell Drive; and
“MDCI is equitably estopped from asserting the statute of limitations defense because it obfuscated and concealed from [Kyser] that VEL was not the responsible party.”
The circuit court also denied the summary-judgment motions filed by VEL, Stafford, and Greene.
The petitioners petitioned this Court for a writ of mandamus directing the circuit court to vacate its order denying their summary-judgment motions and to enter a new order granting their summary-judgment motions.
Standard of Review
“This Court will issue a writ of mandamus when the petitioner shows: ‘“(1) a clear legal right to the order sought; (2) an imperative duty upon the respondent to perform, accompanied by *599 a refusal to do so; (3) the lack of another adequate remedy; and (4) the-properly invoked jurisdiction of the court.” ’ Ex parte General Motors of Canada Ltd., 144 So.3d 236, 238 (Ala. 2013) (quoting Ex parte BOC Grp., Inc., 823 So.2d 1270, 1272 (Ala. 2001)). This Court generally will not review by a writ of mandamus a trial court’s denial of a motion for a summary judgment unless one of a limited number of exceptions apply. The case before us satisfies one such exception:
“ ... In a narrow class of cases involving fictitious parties and the relation-back doctrine, this Court has reviewed the merits of a trial court’s denial of a summary-judgment motion in which a defendant argued that the plaintiff’s claim was barred by the applicable statute of limitations. See Ex parte Snow, 764 So.2d 531 (Ala. 1999) (issuing the writ and directing the trial court to enter a summary judgment in favor of the defendant); Ex parte Stover, 663 So.2d 948 (Ala. 1995) (reviewing the merits of the trial court’s order denying the defendant’s motion for a summary judgment, but denying the defendant’s petition for a writ of mandamus); Ex parte FMC Corp., 599 So.2d 592 (Ala. 1992) (same); Ex parte Klemawesch, 549 So.2d 62, 65 (Ala. 1989) (issuing the writ and directing the trial court ‘to set aside its order denying [the defendant’s] motion to quash service or, in the alternative, to dismiss, and to enter an order granting the motion’)....’”
“Ex parte Mobile Infirmary Ass’n, 74 So.3d 424, 427-28 (Ala. 2011) (quoting Ex parte Jackson, 780 So.2d 681, 684 (Ala. 2000)).”
Ex parte Nicholson Mfg. Ltd., 182 So.3d 510, 512-13 (Ala. 2015).[3]
Discussion
The parties do not dispute that a two-year statute of limitations applies to Kyser’s claims against the petitioners. The actions alleged to have caused Kilgore’s injuries and damages occurred in June 2011; Kyser filed the original complaint on February 27, 2013. The parties likewise do not dispute that the applicable two-year statute of limitations expired in June 2013. Kyser sought to amend the complaint to substitute MDCI, Stafford, and Greene for fictitiously named defendants after the statute of limitations had expired.
The circuit court determined that the amended complaints relate back to' the date of the original complaint pursuant to Rule 15(c), Ala. R. Civ. P., which states, in pertinent part:
“(c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when

"....

“(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, except as may be otherwise provided in Rule 13(c)[, Ala. R. Civ. App.,] for counterclaims maturing or acquired after pleading, or
“(3) the amendment, other than one naming a party under the party’s true name after having been initially sued under a fictitious name, changes the par *600 ty or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the applicable period of limitations or one hundred twenty (120) days of the commencement of the action, whichever comes later, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party, or
“(4) relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h)[, Ala. R. Civ. P.].”
It appears that the circuit court determined that the amended complaints relate back to the date of the original complaint under both Rule 15(c)(3) and (4). The petitioners argue that only Rule 15(c)(4) could apply. We agree.
Rule 15(c)(3) applies to an amendment that “changes the party or the naming of the party against whom a claim is asserted”; Rule 15(c)(3) expressly does not apply to amendments “naming a party under the party’s true name after having been initially sued under a fictitious name,” In the present case, Kyser did not seek to change the name of the party against whom she brought the original complaint. Kyser sued VEL in the original complaint. In the amended complaints, Kyser did not seek to change the name of VEL to MDCI, Stafford, or Greene but, instead, substituted MDCI, Stafford, and Greene for fictitiously named defendants; VEL remains a party to this action. Kyser sought to add MDCI, Stafford, and Greene as parties based on the “principles applicable to fictitious party practice.” Rule 15(c)(4). Accordingly, under Rule 15(c)(4), Kyser’s amendments substituting MDCI, Stafford, and Greene for fictitiously named defendants relate back to the date of the original complaint only if she satisfied the requirements of Rule 9(h), Ala. R. Civ. P. See Ex parte Noland Hosp. Montgomery, LLC, 127 So.3d 1160, 1169 (Ala. 2012)(“An amendment merely substituting a named party for a fictitiously named party relates back only if the provisions of Rule 9(h) are satisfied.”), and Mitchell v. Thomley, 98 So.3d 556, 561 (Ala. Civ. App. 2012)(“The Committee Comments on the 1978 Adoption of Rule 15, Ala. R. Civ. P., indicate that the provisions of Rule 15(c)(3) ‘per-mite 3 an amendment to relate back which substitutes the real party in interest for a named plaintiff.’ (Emphasis added.) Such an amendment, which changes a named party, relates back only if the requirements of Rule 15(c)(3) are met. Conversely, an amendment merely substituting a real party for a fictitiously named party relates back if the provisions of Rule 9(h) are satisfied. Committee Comments on 1973 Adoption.”). We will analyze whether Kyser’s amendments substituting MDCI, Stafford, and Greene for fictitiously named defendants relate back to the filing of the original complaint under Rule 15(c)(4); Rule 15(c)(3) does not apply in this case.
In Ex parte Nicholson, supra, we set forth the following applicable law:
“Rule 9(h), Ala. R. Civ. P., provides: “‘When a party is ignorant of the name of an opposing party and so alleges in the party’s pleading, the opposing party may be designated by any name, and when the party’s true name is discovered, the process and all pleadings and proceedings in the action may be amended by substituting the true name.’
“This rule permits a party who is ‘ignorant of the name of an opposing party’ to identify that party by a fictitious name. Once the true name of the opposing party is discovered, the party may amend the pleadings to substitute that *601 true name. Rule 15(c)(4), Ala. R. -Civ. P., provides that such an amendment shall ‘relate[ ] back to the date of the original pleading when ... relation back is permitted by principles applicable to fictitious party practice pursuant to Rule 9(h).’
“ ‘However, the relation back principle applies only when the plaintiff “is ignorant of the name of an opposing party.” Rule 9(h); Harmon v. Blackwood, 623 So.2d 726, 727 (Ala. 1993) (“In order to invoke the relation-back principles of Rule 9(h) and Rule 15(c), a plaintiff must ... be ignorant of the identity of that defendant....'”); Marsh v. Wenzel, 732 So.2d 985 (Ala. 1998).’
“Ex parte General Motors[ of Canada Ltd.], 144 So.3d [236,] 239 [ (Ala. 2013) ].
“ ‘ “The requirement that the plaintiff be ignorant of the identity of the fictitiously named party has been generally explained as follows: ‘The correct test is whether the plaintiff knew, or should have known, or was on notice, that the substituted defendants were in fact the parties described fictitiously.’ Davis v. Mims, 510 So.2d 227, 229 (Ala. 1987)....’”
“Ex parte Mobile Infirmary[ Ass’n], 74 So.3d [424,] 429 [(Ala. 2011)] (quoting Crawford v. Sundback, 678 So.2d 1057, 1060 (Ala. 1996)(emphasis added)).
“In addition to being ignorant of the fictitiously named party’s identity, the plaintiff has a duty to exercise ‘due diligence’ in identifying such a defendant. Ex parte Mobile Infirmary, 74 So.3d at 429; Crowl v. Kayo Oil Co., 848 So.2d 930, 940 (Ala. 2002). It is incumbent upon the plaintiff to exercise due diligence both before and after the filing of the complaint. Ex parte Ismail, 78 So.3d 399 (Ala. 2011). Only if the plaintiff has acted with , due diligence in discovering the true identity of a fictitiously named defendant will an amendment substituting such a party relate back to the filing of the original complaint. Ex parte Mobile Infirmary, 74 So.3d at 429. Therefore, if at the time the complaint is filed, a plaintiff knows the identity of the fictitiously named party or should have discovered that party’s identity, relation back is not permitted and the running of the statute of limitations is not tolled:
“ ‘[A]n amendment substituting a new defendant in place of a fictitiously named defendant will relate back to the. filing of the original complaint only if , the plaintiff acted with “due diligence in identifying the fictitiously named defendant as the party the plaintiff intended to sue.” Ignorance of the new defendant’s identity is no excuse if the plaintiff should have known the identity of that defendant when the complaint was filed.... ’
“74 So.3d at 429 (quoting Ex parte Snow, 764 So.2d 531, 537 (Ala. 1999)(em-phasis added)).”
182 So.3d at 513-14.
 We will first address the petitioners’ argument as it relates to MDCI. The petitioners argue that Kyser was not ignorant of MDCI at the time that she filed the original complaint. The petitioners argue that, before Kyser filed the original complaint, she had received several communications identifying MDCI. Specifically, Kyser’s counsel received e-mail communications mentioning MDCI. Kyser’s counsel also received a letter , from Campbell offering to settle the claims; this letter unequivocally identified MDCI as the insured on whose behalf Penn National was acting. In all capital letters at the. top of the letter, Campbell identified “MONTGOMERY DRUG INC” as the “insured.” Further, and perhaps most, significantly, on the day that Kyser filed the original complaint, Kyser’s trial counsel sent Campbell a letter in which the subject line of the letter *602 stated: “Re: Montgomery Drug Inc., Adams Drug Company.”
We agree with the petitioners. The undisputed evidence indicates that Kyser was not ignorant of MDCI at the time that she filed the original complaint. Campbell’s letter specifically named MDCI as the insured on whose behalf Penn National was acting. Further, the letter to Campbell notifying Campbell that the action had been commenced against VEL specifically identified MDCI. That evidence indicates that Kyser actually “knew, or should have known,” of MDCI’s identity at the time that she filed the original complaint. Davis v. Mims, 510 So.2d 227, 229 (Ala. 1987). Moreover, the numerous communications sent to Kyser’s counsel mentioning MDCI are evidence indicating that Kyser was at least “on notice” of MDCI’s identity. Id The undisputed evidence indicates that Kyser knew, should have known, or was on notice that MDCI was the proper party to sue at the time that she filed the original complaint. Accordingly, because Kyser was not ignorant of MDCI’s identity before the statute of limitations expired, the circuit com! had no discretion other than to grant MDCI’s summary-judgment motion in its favor on the statute-of-limitations ground.
The petitioners also argue that Kyser failed to exercise due diligence in identifying MDCI. However, because the petitioners have demonstrated that Kyser was not ignorant of MDCI’s identity, we need not consider further whether Kyser failed to exercise due diligence in identifying MDCI. See Patterson v. Consolidated Aluminum Corp., 101 So.3d 743, 747 (Ala. 2012)(“The absence of evidence establishing any one of the[ ] factors [pertaining to relation-back principles] is sufficient to support a trial court’s judgment disallowing the outside-the-limitations-period substitution.”).
Now we turn to whether the amended complaint substituting Stafford and Greene for fictitiously named defendants relates back to the filing of the original complaint. The petitioners do not dispute that Kyser was ignorant of Stafford’s and Greene’s identities at the time she filed the original complaint, i.e., the petitioners do not argue that Kyser “knew, or should have known, or was on notice” of Stafford’s and Greene’s identities at the time she filed the original complaint. Davis v. Mims, 510 So.2d at 229. Instead, the petitioners argue that Kyser’s “failure to use due diligence in joining MDCI led directly to the delay in identifying” Stafford and Greene and that Kyser failed to promptly amend her complaint to substitute Stafford and Greene for fictitiously named defendants once she learned of Stafford’s and Greene’s identities. The petitioners’ petition, at p. 20.
Concerning their argument that Kyser failed to exercise due diligence to identify Stafford and Greene, the petitioners do not argue that Kyser could have identified Stafford and Greene before Kyser added MDCI as a party. Instead, the petitioners argue only that Kyser “waited nearly two months before issuing any discovery to [MDCI] requesting the identity of MDCI employees who might be potential parties to the suit.” The petitioners’ petition, at p. 20. This is the entirety of their argument regarding their assertion that Kyser failed to exercise due diligence in identifying Stafford and Greene.
The petitioners’ argument does not establish a clear legal right to the relief they seek. Concerning due diligence, this Court has stated that, “if at the time the complaint is filed, a plaintiff knows the identity of the fictitiously named party or should have discovered that party’s identity, relation back is not permitted and the running of the statute of limitations is not tolled.” Ex parte Nicholson, 182 So.3d at 514 (emphasis omitted). The petitioners do not *603 argue that Kyser could have discovered the identities of Stafford and Greene before MDCI was substituted for fictitiously named defendant “DD”; instead, they argue that Kyser failed to exercise due diligence because she waited two months to serve MDCI with discovery requests asking MDCI to identify MDCI employees who might be potential parties to the action. The petitioners have not cited any authority to support them assertion that Kyser’s two-month delay in serving discovery requests on MDCI is a failure to exercise due diligence to discover the identities of Stafford and Greene. The petitioners have therefore not demonstrated a clear legal right to the relief they seek.
Next, we address the petitioners’ argument that the amendment substituting Stafford and Greene for fictitiously named defendants should not be found to relate back to the filing of the original complaint because, the petitioners argue, Kyser failed to promptly amend the complaint to substitute Stafford and Greene for fictitiously named defendants once Kyser learned of Stafford’s and Greene’s identities. The petitioners argue that, “once [Kyser] became aware of Stafford and Greene’s identities, she waited another month before amending her complaint to substitute Stafford and Greene for fictitiously named defendants.” The petitioners’ petition, at p. 20. The petitioners argue that the one-month delay is evidence establishing that Kyser failed to promptly amended the complaint once she knew the identities of Stafford and Greene.
The only authority relied upon by the petitioners in support of their argument is Patterson, supra. In Patterson, the plaintiffs in that case waited approximately 15 months after they should have known the identities of the fictitiously named defendants before they amended their complaint. Based on that 15-month delay, this Court determined that the plaintiffs had failed to promptly amend their complaint once they learned of the identities of the fictitiously named defendants that they had named in their original complaint. The present case is distinguishable from Patterson. The petitioners allege that Kyser delayed substituting Stafford and Greene for fictitiously named defendants for one month. The delay in this case is far less than the 15-month delay in Patterson. We cannot say that the holding in Patterson, the only case relied upon by the petitioners in support of their argument, supports the determination that Kyser failed to promptly amend the complaint in this case.
The petitioners’ arguments concerning Stafford and Greene'do not demonstrate that the petitioners have a clear legal right to the relief they seek. The petitioners have not directed this Court’s attention to sufficient evidence or authority supporting their argument that the amended complaint substituting Stafford and Greene for fictitiously named defendants does not relate back to the filing of the original complaint. Accordingly, we deny this aspect of the petitioners’ petition..
Next, the petitioners argue that the circuit court erred in determining that the applicable statute of limitations was tolled by the doctrines of equitable tolling and equitable estoppel. The petitioners raise this argument regarding the amended complaints substituting MDCI, Stafford, and Greene for fictitiously named defendants. However, we need not consider this argument as to the amendment substituting Stafford and Greene for fictitiously named defendants because, as we determined above, the petitioners have failed to demonstrate that that amendment does not relate back to the original complaint under the principles of relation back. Accordingly, we will consider the petitioners’ argument only as it pertains to the amend *604 ment substituting-.MDCI for fictitiously-named defendant “DD.”
In Weaver v. Firestone, 155 So.3d 952, 957-58 (Ala. 2013), this Court discussed the equitable-tolling doctrine:
“ ‘[A] litigant seeking equitabie tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way’ as to the filing of his action. Pace v. DiGuglielmo, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005). In Ex parte Ward, 46 So.3d 888 (Ala. 2007), this Court ‘[held] that equitable tolling is available in extraordinary circumstances that are beyond the petitioner’s control and that are unavoidable even with the exercise of diligence.’ 46 So.3d at 897. The Court noted, that in determining whether equitable tolling is applicable, consideration must be given as .“‘to whether principles of ‘equity would make the rigid application of a limitation period unfair’ and whether the petitioner has ‘exercised reasonable diligence in investigating and bringing [the] claims.’”’ Id. (quoting Fahy v. Horn, 240 F.3d 239, 245 (3d Cir. 2001), quoting in turn Miller v. New Jersey Dep’t of Corr., 145 F.3d 616, 618 (3d Cir. 1998)); see also Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990) (‘We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant- has been induced or tricked by his adversary’s misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.’ (footnotes omitted)). This Court acknowledged in Ward that ‘ “the threshold necessary to trigger equitable tolling is very high, lest, the exceptions swallow the rule.” United States v. Marcello, 212 F.3d 1005, 1010 (7th Cir. 2000).’ 46 So.3d at 897. The plaintiff.
“‘bears the burden of demonstrating ... that there are ... extraordinary circumstances justifying the application of the doctrine of equitable tolling. See Spitsyn v. Moore, 345 F.3d [796,] 799 [ (9th Cir. 2003) ] (holding that the burden is on the petitioner for the writ of habeas corpus to show that the exclusion applies and that the “extraordinary circumstances” alleged, rather than a lack of diligence on his part, were the proximate cause of the untimeliness); Drew v. Department of Corr., 297 F.3d 1278, 1286 (11th Cir. 2002) (“The burden of establishing entitlement to this extraordinary remedy plainly rests with the petitioner.”).’
“Ward, 46 So.3d ‘at 897. If is'well settled that whether equitable tolling is applicable in a case generally involves a ‘ “fact-specific inquiry.” ’ See, e.g., Spitsyn v. Moore, 345 F.3d 796, 799 (9th Cir. 2003); Put[man] v. Galaxy 1 Marketing, Inc., 276 F.R.D. 264, 275 (S.D. Iowa 2011) (‘[R]esolution of the issue is fact-specific.’); see also Transport Ins. Co. v. TIG Ins. Co., 202 Cal.App.4th 984, 1012, 136 Cal.Rptr.3d 315, 337 (2012) (‘[W]e are hard pressed to think of more fact-specific issues than “accrual” and [equitable] “tolling.”’).”
The petitioners argue that Kyser failed to present any evidence indicating that an “extraordinary circumstance” kept Kyser from learning the identity of MDCI before the statute’ of limitations, expired. Kyser argues that “the facts here plainly establish that MDCI mislead [sic] [Kyser].” Kyser’s answer, at p. 16. In support of her argument, Kyser points to the facts that Penn National engaged in settlement discussions with Kyser’s counsel and made settlement offers.- Kyser’s argument is not persuasive. Penn National referenced MDCI -numerous times in its communications with Kyser’s counsel and even identi- *605 fled MDCI as its insured in a letter Campbell sent to Kyser’s counsel offering to settle the claims. Kyser has not directed this Court to any evidence indicating that Penn National, or anyone else, made a false representation to prevent Kyser from discovering the identity of MDCI. In fact, as set forth above, Kyser was not ignorant of MDCI’s identity, as evidenced by her counsel’s letter to Campbell, which referenced MDCI in the- subject line of the letter, informing Campbell that a complaint-had been filed against VEL. The petitioners have demonstrated that-Kyser did not pursue her rights diligently and that there was no “extraordinary circumstance” standing in the way of Kyser’s discovery of the identity of MDCI before the statute of limitations expired.
The standard concerning the doctrine of equitable estoppel is similar. Regarding the doctrine of equitable estoppel, this Court stated in McCormack v. AmSouth Bank, N.A., 759 So.2d 538, 543 (Ala. 1999):
“In City of Birmingham v. Cochrane Roofing & Metal Co., 547 So.2d 1159 (Ala. 1989), this Court summarized the law applicable in- situations where one party asserts equitable estoppel as a bar to another party’s pleading the statute of limitations as a defense:
“ ‘In Mason v. Mobile County, 410 So.2d 19 (Ala. 1982), this Court held that if a defendant either fraudulently or innocently represents to the plaintiff that he will remedy a problem, and relying on these representations the plaintiff is induced not to file a lawsuit or take any action, the defendant may be estopped from raising the statute of limitations as a defense. Additionally, in Arkel Land Co. v. Cagle, 445 So.2d 858 (Ala. 1983), we held that if a defendant represents that a lawsuit is unnecessary because he intends to take care of the problem he is likewise estopped from raising the statute of limitations as a defense.’
“Cochrane Roofing, 547 So.2d at 1167.”
Kyser argues that “[t]he circuit court correctly found that [the] [petitioners concealed MDCI’s identity and misrepresented V[EL]’s role by engaging in settlement discussions they had no intention of following through on just to stall discovery.” Kyser’s answer, at pp. 19-20. Kyser directs this Court’s attention to two communications from Penn National to'Kyser’s counsel in support of her argument that MDCI sought to conceal its identity. The first piece of evidence referenced by Kyser is the letter that Campbell sent to Kyser’s trial counsel on February 27, 2013, offering to settle the claims. In that letter, Campbell specifically identified MDCI as Penn National’s insured, on whose behalf Penn National was acting. The other piece of evidence referenced by Kyser is an email sent on March 5, 2013, from McLain, an attorney hired by Penn National to represent MDCI, to Kyser’s trial counsel to “confirm the agreement we reached today giving us an open extension to respond to the lawsuit filed against our insured Montgomery Drug Inc.” (Emphasis added.) The subject line of the e-mail stated: “Kilgore v Montgomery Drug Inc.” The evidence relied upon by Kyser does not demonstrate that MDCI sought to conceal its identity; it is evidence of éxactly the opposite. Penn National expressly named MDCI in several of its communications to Kyser’s counsel; Penn National made no false representations concerning MDCI’s identity and took no action to conceal MDCI’s identity. The petitioners have demonstrated that the doctrine of equitable estoppel does not apply to the facts presented in this case.
Lastly, the petitioners argue that, “[i]n the absence of valid claims against ... MDCI, Stafford and Greene, V[EL] is due to be dismissed.” The petitioners’ petition, at p. 30. We decline to address this argu *606 ment because it is not appropriate on mandamus review. We addressed the other arguments raised by the petitioners because, although we generally do not review the denial of a summary-judgment motion by a petition for a writ of mandamus, they fit within an exception to that general rule. See Ex parte Nicholson, supra (stating that this Court will provide mandamus review of a circuit court’s denial of a summary-judgment motion in which a defendant argues that the plaintiffs claim is barred by the applicable statute of limitations when that case involves fictitiously named parties and the relation-back doctrine). The petitioners’ argument pertaining to VEL does not fit within this exception. VEL’s summary-judgment motion did not involve the relation-back doctrine; VEL simply argued that it had nothing to do with this case. The petitioners have not demonstrated that their mandamus petition concerning VEL fits within an exception to the general rule that this Court will not provide mandamus review of a circuit court’s denial of a summary-judgment motion. Therefore, this argument is not properly before us.
Conclusion
We grant the petitioners’ petition in part and deny it in part. We grant the petitioners’ petition insofar as they request that this Court issue a writ directing the circuit court to vacate its order denying MDCI’s summary-judgment motion and to enter an order granting MDCI’s summary-judgment motion. We deny the petitioners’ petition insofar as they request that this Court issue a writ directing the circuit court to vacate its order denying VEL’s, Stafford’s, and Greene’s summary-judgment motions and to enter an order granting those motions.
PETITION GRANTED IN PART AND DENIED IN PART; WRIT ISSUED.
Bolin, Main, and Bryan, JJ., concur.
Stuart and Shaw, JJ., concur in part and concur in the result.
Murdock, J., concurs in part and dissents in part.

. The plaintiffs also sued AmerisourceBergen Drug Corporation, but that party has since been dismissed from the action.

. In their original complaint, the plaintiffs described fictitiously named defendant "DD” as one of "those other persons or corporations who participated in or are otherwise responsible for the tortious acts referenced herein.”

. Kyser alleges that "[m]andamus is not proper for resolving factual disputes.” Kyser’s answer, at p. 13. Kyser further alleges that the petitioners’ petition is nothing more than "a gripe about the facts of the case.” Id., at p. 14. We do not find Kyser’s argument persuasive. The operative facts of this case are not in dispute. As will be demonstrated below, the petitioners' arguments concern the circuit court’s interpretation of the law as applied to the facts. Such arguments are appropriately reviewed when-presented in a petition for a writ of mandamus.